499 A.2d 581

**Marion H. TORCHIA, guardian on Behalf of Robin Ann TORCHIA, Debra Torchia and Mark Torchia, Appellees,**

**v.**

**Kathleen M. TORCHIA, Appellant.**

Superior Court of Pennsylvania.

Argued March 19, 1985.

Filed Aug. 9, 1985.

Reargument Denied Oct. 22, 1985.

ported by evidence may be sufficient to establish due diligence, they are contrary to established principles.

230

Raymond, J. Quaglia, Philadelphia, for appellant.

E. Chandler Hosmer, III, Philadelphia, for appellees.

Before WIEAND, WATKINS and GEISZ,* JJ.

WIEAND, Judge:

If, pursuant to a postnuptial property settlement agreement, a father promises to maintain his three children as beneficiaries of his life insurance policy, may the children recover the proceeds of the policy from the deceased husband's second wife who, without fault on her part, was named beneficiary of the policy in violation of the agree-

* The Honorable John A. Geisz, Senior Judge, of the Court of Common Pleas of Philadelphia County, Pennsylvania, is sitting by designation.

ment? The trial court concluded that the second wife had been unjustly enriched and decreed that she should pay the proceeds of the policy to the decedent's children by his first marriage. The widow appealed. We affirm.

Marion Torchia and Joseph Torchia were married on May 1, 1964. They were divorced in 1979. As part of a written property settlement agreement on February 9, 1979, Joseph Torchia promised to "maintain his (three) children as beneficiaries of all insurance policies that he presently owns." On March 5, 1979, Torchia named his three children as beneficiaries on two policies of insurance maintained at his place of employment. He subsequently remarried and soon thereafter changed the beneficiary on the two policies, naming his second wife, Kathleen M. Torchia, as primary beneficiary and his children as contingent beneficiaries. Joseph Torchia died on November 5, 1982. His widow was paid $44,000.00 as named beneficiary of the two aforesaid policies.[1] Marion Torchia, as parent and guardian for her minor children, commenced an action in equity against Kathleen Torchia to recover the sum of $44,000.00 paid to her by the insurance company. The trial court, after hearing, decreed that the guardian was entitled to recover the sum of $44,000.00, plus interest. Exceptions were dismissed, and a final decree was entered. This appeal followed.

The findings of a chancellor, affirmed by the court en banc, have the effect of a jury verdict and may not be reversed unless a review of the record reveals that they are unsupported by the evidence or are predicated upon erroneous inferences and deductions or errors of law. *Biglan v. Biglan*, 330 Pa.Super. 512, 517, 479 A.2d 1021, 1024 (1984). See also: *Presbytery of Beaver-Butler v. Middlesex Presbyterian Church*, 507 Pa. 255, 263, 489 A.2d 1317, 1323 (1985).

---

**1.** Kathleen Torchia also received $19,000.00 as beneficiary of a policy of insurance which was not subject to the terms of the property settlement agreement executed by her deceased husband at the time of the divorce from his first wife.

■ To sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either "wrongfully secured or passively received a benefit that it would be unconscionable for her to retain." *Roman Mosaic & Tile Co. v. Vollrath*, 226 Pa.Super. 215, 218, 313 A.2d 305, 307 (1973). "In order to recover, there must be *both* (1) an enrichment, and (2) an injustice resulting if recovery for the enrichment is denied." *Samuels v. Hendricks*, 300 Pa.Super. 11, 14–15, 445 A.2d 1273, 1275 (1982) (emphasis in original), quoting *Meehan v. Cheltenham Township*, 410 Pa. 446, 449, 189 A.2d 593, 595 (1963). "[A] showing of knowledge or wrongful intent on the part of the benefited party is not necessary in order to show unjust enrichment. Rather, the focus is on the resultant unjust enrichment[,] not on the party's intention." *Crossgates Realty, Inc. v. Moore*, 279 Pa.Super. 247, 252, 420 A.2d 1125, 1128 (1980).

The decisions in most jurisdictions have recognized that a contract not to change the beneficiary of a policy of life insurance, entered into by an insured and his designated beneficiary for a valuable consideration, is binding as between the insured, or his volunteer, and the contractually determined beneficiary and will be enforced in equity. In *Hundertmark v. Hundertmark*, 372 Pa. 138, 93 A.2d 856 (1952), a husband had promised as part of a postnuptial property settlement agreement not to change the beneficiary on a life insurance policy to anyone other than his wife unless the wife should remarry. The husband subsequently remarried and thereupon named his second wife as beneficiary "without any inducement by [the second wife]." *Id.*, 372 Pa. at 140, 93 A.2d at 857. When the insured died, his first wife commenced an action in equity in the nature of a bill of interpleader against the widow and the insurance company to determine who was entitled to receive the proceeds. The chancellor awarded the proceeds, which had been paid into court, to the widow. The Supreme Court reversed. The Court said:

"The law appertaining to the equitable assignment of the benefits of an insurance policy is well settled in this state. There is no doubt that a beneficiary named pursuant to a definite agreement that he shall be so named, by virtue of a valuable consideration moving from him, acquires a right in the policy or the proceeds thereof that will be protected against subsequently named beneficiaries who have no superior equity...."

*Id.*, 372 Pa. at 143, 93 A.2d at 859, quoting *Visnik v. Mance*, 326 Pa. 399, 402, 191 A. 127, 129 (1937). The widow, the Court held, was merely a "volunteer," and she did not have an equity that was superior to that of the first wife who was contractually an irrevocable beneficiary for value. It made no difference, the Court added, that the insurance company had paid the proceeds into court; the result would have been the same if the company had already paid the proceeds to the designated beneficiary. *Id.*, 372 Pa. at 145–146, 93 A.2d at 860. See also: *The Supreme Lodge, Knights and Ladies of Honor v. Ulanowsky*, 246 Pa. 591, 92 A. 711 (1914). Compare: *Gershman v. Metropolitan Life Insurance Co.*, 405 Pa. 585, 176 A.2d 435 (1962) (agreement to make children sole beneficiaries of life insurance policy, entered into *without* lawful consideration, could not be enforced in equity against named beneficiary).

Other jurisdictions have reached the same result. See: 5 Couch, Cyclopedia of Insurance Law § 28:41 (2d ed.1984). Most courts have concluded that a promise, made as part of a separation agreement, to maintain a policy of insurance designating either spouse or children as beneficiaries vests in such spouse or children an equitable interest in the policy which is superior to that of a stranger to the agreement who was subsequently named gratuitously as beneficiary. Thus, in *Markwica v. Davis*, 64 N.Y.2d 38, 484 N.Y.S.2d 522, 473 N.E.2d 750 (1984), where the decedent's second wife had been named beneficiary in contravention of a prior separation agreement, the Court of Appeals of New York said:

Defendant, having furnished no consideration for the receipt of the proceeds of the life insurance policy, has received a gratuitous benefit and would be unjustly enriched in the eyes of the law were she to retain those proceeds against the claims of the children for breach by their father of his agreement to continue them as beneficiaries of the policy. That the children might also have a breach of contract claim against their father's estate is of no moment so far as the liability of defendant to the children is concerned....

*Id.* at 41, 484 N.Y.S.2d at 524, 473 N.E.2d at 752 (citations omitted). To the same effect are *Rogers v. Rogers*, 63 N.Y.2d 582, 483 N.Y.S.2d 976, 473 N.E.2d 226 (1984) and *Simonds v. Simonds*, 45 N.Y.2d 233, 408 N.Y.S.2d 359, 380 N.E.2d 189 (1978). See also: *Williams v. Williams*, 276 Ala. 43, 158 So.2d 901 (1963); *Lock v. Lock*, 8 Ariz.App. 138, 444 P.2d 163 (1968); *Orsini v. Commercial National Bank*, 6 Ark.App. 166, 639 S.W.2d 516 (1982); *Mutual Life Ins. Co. v. Franck*, 9 Cal.App.2d 528, 50 P.2d 480 (1935); *Kulmacz v. New York Life Insurance Co.*, 39 Conn.Supp. 470, 466 A.2d 808 (1983); *Myers v. Myers*, 408 A.2d 279 (Del.1979); *Reeves v. Reeves*, 236 Ga. 209, 223 S.E.2d 112 (1976); *Appelman v. Appelman*, 87 Ill.App.3d 749, 43 Ill. Dec. 199, 410 N.E.2d 199 (1980); *Green v. Green*, 13 Mass. App. 340, 433 N.E.2d 92 (1982); *General American Life Insurance Co. v. Rogers*, 539 S.W.2d 693 (Mo.Ct.App.1976); *McKissick v. McKissick*, 93 Nev. 139, 560 P.2d 1366 (1977); *Hirsch v. Travelers Insurance Co.*, 134 N.J.Super. 466, 341 A.2d 691 (1975); *In re Estate of Lemer*, 306 N.W.2d 244 (S.D.1981); *Herrington v. Boatright*, 633 S.W.2d 781 (Tenn. Ct.App.1982); *Gutierrez v. Madero*, 564 S.W.2d 185 (Tex. Civ.App.1978); *Travelers Insurance Co. v. Blanchard*, 139 Vt. 559, 433 A.2d 296 (1981). Accord: *Great American Reserve Insurance Co. v. Maxwell*, 38 Colo.App. 305, 555 P.2d 988 (1976); *Holmes v. Holmes*, 463 So.2d 578 (Fla.Dist. Ct.App.1985); *Johnson v. Hartford Insurance Group*, 99 Idaho 134, 136 n. 2, 578 P.2d 676, 678 n.2 (1978); *Borotka v. Boulay*, 268 Md. 244, 299 A.2d 803 (1973); *Barden v.*

*Metropolitan Life Insurance Co.*, 41 N.C.App. 135, 254 S.E.2d 271 (1979); *Madsen v. Estate of Moffitt*, 542 P.2d 187 (Utah 1975); *Kirk v. Jacobson*, 85 Wash.2d 85, 530 P.2d 643 (1975); *Peckham v. Metropolitan Life Insurance Co.*, 415 F.2d 312 (10th Cir.1969) (applying Kansas law).

■ These authorities are determinative[2] of the issue in this case. Joseph Torchia, the deceased owner of the policy, had promised for legally adequate consideration to maintain two policies of insurance on his life and name his children as beneficiaries thereof. The children's rights were superior to those of appellant, who was a mere volunteer. Even though the widow was a passive and innocent party, her rights were subordinate. It would have been unjust to allow her to retain the proceeds of the policy in preference to the children.

■ Appellant argues, however, that appellee's children are not entitled, as third party beneficiaries, to enforce their contractual rights against her because she was not a party to the contract. This misconceives the nature of the action which the children asserted and which the court enforced. The children's cause of action was not founded on a contractual duty which appellant owed; it was based, rather, on the equitable interest in the proceeds of the policy which had been vested in the children by their father's agreement.

**2.** It appears that the trial court was unaware of the decision in *Hundertmark* and the line of cases we have cited. Instead, the court relied upon decisions of this Court which have held that when an innocent party benefited from the wrongful act of another, he was thereby unjustly enriched if the victim of the wrongful act would have received that benefit but for the wrongful act of the third party. See: *Zvonik v. Zvonik*, 291 Pa.Super. 309, 435 A.2d 1236 (1981); *Crossgates Realty, Inc. v. Moore, supra; Gee v. Eberle*, 279 Pa.Super. 101, 420 A.2d 1050 (1980); *Scott v. Purcell*, 264 Pa.Super. 354, 399 A.2d 1088 (1979), *aff'd on other grounds*, 490 Pa. 109, 415 A.2d 56 (1980). In each of these cases, the facts are distinguishable from those in the instant case. Here, the evidence showed and the court found that the widow had been innocent of any wrongdoing. The issue in this case, therefore, concerns the rights of parties where all are innocent of wrongful conduct. This is not the same as where the party guilty of wrongful misconduct stands to benefit in some way from his wrong.

■ Appellant also argues that the trial court erred in denying a motion to amend her answer to permit her to allege that the first wife had committed a prior breach of the postnuptial agreement. The record, however, is inadequate to permit appellate review of this issue. No written motion to amend was ever presented, and the trial record does not disclose that an oral motion to amend was made. There is, consequently, no disclosure at any place in this record of the *factual* averments which appellant wished to add to her answer other than the bald conclusion that the agreement between the decedent and his first wife had been breached by the first wife. This is inadequate. We are unable from the record to ascertain the precise nature of the amendment which appellant wished to offer. See: *Coyne v. Porter-Hayden Co.*, 286 Pa.Super. 1, 7, 428 A.2d 208, 210 (1981).

The trial transcript does reflect a statement by appellant's counsel that he orally requested leave to amend his answer during an unrecorded, pre-trial conference and that his request was denied because it had been untimely, i.e., the case had already been called for trial. Even so, the record does not disclose the *factual* averment which appellant intended to add via an amended answer. Where, as here, there is no basis for concluding that facts existed which would have changed the result, we will not find an abuse of discretion by the trial court which refused, after the case had been called for trial, to grant an untimely request for the court to consider a possible amendment to the answer. See: *Cucinotti v. Ortmann*, 399 Pa. 26, 159 A.2d 216 (1960).

■ Appellant contends finally that the trial court erred in failing to allow her a credit for debts which she incurred in caring for the decedent during his last illness and in arranging for his burial. Her answer did not contain a counterclaim, and a claim for these expenses was not made at trial. A possible credit was asserted for the first time via exceptions to the court's adjudication and decree nisi. Where, as here, the pleadings contain no counterclaim and

there has been neither a request to amend nor evidence to support a credit for services separately rendered, the claim will not thereafter be considered. Cf. *Jackson v. Richards 5 & 10 Inc.*, 289 Pa.Super. 455, 433 A.2d 888 (1981). Moreover, a claim for medical and funeral expenses would have been more properly asserted against the decedent's estate. The children were not liable for such services and did not become liable merely because they acquired an equitable interest in and to the proceeds of policies of insurance written on the life of their deceased father.

■ It is unfortunate that of several deserving persons, one must be denied benefits under these policies of insurance. The law, however, is clear. The rights of children contractually entitled to receive the proceeds of a policy of insurance on their father's life are superior to those of a volunteer who was innocently, albeit gratuitously, named as beneficiary by their father in violation of his agreement.

Order affirmed.