629 A.2d 119

## Philip Charles EONDA

v.

## Jeannene A. AFFINITO, Individually and as Executrix of the Estate of Philip F. Eonda, Deceased.

## Appeal of Jeannene A. AFFINITO.

Superior Court of Pennsylvania.

Argued March 23, 1993.

Filed July 19, 1993.

Frank C. Carroll, Washington, for appellant.

Paul J. Leventon, Pittsburgh, for appellee.

Before BECK, KELLY and HOFFMAN, JJ.

BECK, Judge:

In this appeal concerning the distribution of life insurance proceeds, we decide whether the absolute right to change beneficiaries under the Federal Employees' Group Life Insurance Act (FEGLIA) serves to shield federal employees from their obligations under valid marital separation agreements approved by state court order. We find that the provisions of FEGLIA do not provide such protection and so affirm the trial court's imposition of a constructive trust in favor of appellee.

Phillip (father) and Mildred (mother) Eonda had been married in excess of twenty years when they entered into a Comprehensive Marriage Settlement Agreement ("Agreement") in mid–1982. Among the many things agreed upon in the dissolution of their marriage was a pledge by father to "designate his son, PHILLIP CHARLES EONDA, as beneficiary on all of his existing life insurance policies." At the time the Agreement was entered into, father was employed by the federal government as an air traffic controller and was insured under a FEGLIA policy.

Shortly after the Agreement was executed, Father complied with its terms and named his son as his beneficiary on the FEGLIA policy. Six years later, without notice to mother or son, father changed his benficiary to Jeannene Affinito, appellant herein. Two years after the designation, father died and appellant applied for and received the proceeds of the policy which totaled $34,421.77.

Son brought an action in equity against appellant claiming that she had been unjustly enriched as a result of father's breach of the Agreement. The trial court agreed and imposed a constructive trust for the benefit of son upon the proceeds. Because the proceeds are in the possession of appellant, the trust was imposed upon her individually. The trial court also entered judgment against the estate of father, for which appellant is executrix and sole beneficiary, in the amount of the policy proceeds.[1] The sole basis of appellant's appeal is that the designation of the beneficiary on a FEGLIA policy is governed by federal statute which grants to the insured an unrestricted right to change beneficiaries at any time prior to death, and since federal law preempts state law, son has no claim to the proceeds at issue.

Appellant's claims are based primarily on statutory provisions concerning the operation of FEGLIA and the regu-

---

1. The final decree provides that "[i]n the event the Estate satisfies all or any part of this award then the amount to be held by the Defendant [appellant] on behalf of the plaintiff [son] shall be correspondingly reduced."

lations promulgated thereunder. Appellant asserts that the following provisions are relevant to this inquiry:

The amount of group life insurance and group accidental death insurance in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order of precedence:

First, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death in the employing office ... For this purpose, a designation, change, or cancellation of beneficiary in a will or other document not so executed or filed has no force or effect.

5 U.S.C. § 8705(a).

\* \* \* \* \* \*

The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supercede and preempt any law of any State or political subdivision thereof, or any regulation issued thereunder, which relates to group life insurance to the extent that the law or regulation is inconsistent with the contractual provisions.

5 U.S.C. § 8709(d)(1).

\* \* \* \* \* \*

A change of beneficiary may be made at any time and without the knowledge or consent of the previous beneficiary. This right cannot be waived or restricted.

5 C.F.R. § 870.902.

It is appellant's position that based on the doctrine of preemption, a state court is precluded from imposing a constructive trust upon FEGLIA proceeds. We address first the plain language of the above-referenced laws and rule to determine if appellant's reliance on them is appropriate.

With respect to § 8705, we find no mandate nor implication of preemption. This section merely dictates the priority by which the insurance company shall pay out proceeds. It

further provides that a change in beneficiaries cannot be made in any document other than the official form filed in the appropriate office. There has been no claim by appellee that the Agreement constitutes an official change in the beneficiary; therefore, § 8705 is not relevant to our inquiry.

Section 8709 directly addresses preemption but does so only in the context of state laws that "relate to group life insurance." The validity of a state court marriage settlement agreement does not relate to life insurance and so § 8709 is not implicated under these facts.

It is only the regulation at 5 C.F.R. § 870.902 that poses the possibility of a Congressional intent to preempt. We begin our analysis by noting that an agency's power to promulgate regulations is limited to the authority delegated by Congress. *See Bowen v. Georgetown University Hospital,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988). Even where an agency sets forth with particularity its interpretation of a regulation, a court's review is limited to whether the interpretation is reasonable in light of the language, policies, and legislative history of the Act under which the regulation is promulgated. *See United States v. Riverside Bayview Homes, Inc.,* 474 U.S. 121, 131, 106 S.Ct. 455, 461, 88 L.Ed.2d 419 (1985). *See also Central Dauphin School District v. Commonwealth Department of Education,* 147 Pa. Cmwlth. 426, 608 A.2d 576, 580–81 (1992) (a regulation is binding on a reviewing court if it conforms to the grant of delegated power, is issued in accordance with proper procedures, and is reasonable) (citing *Pennsylvania Human Relations Commission v. Uniform Area School District,* 455 Pa. 52, 313 A.2d 156 (1973)). Therefore, we must analyze and interpret § 870.902 in a manner consistent with the intent of Congress in enacting FEGLIA.

Appellant also relies on *Ridgway v. Ridgway,* 454 U.S. 46, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981), in support of her argument that she is entitled to the proceeds of the policy regardless of the equities of the case. In *Ridgway,* the United States Supreme Court held that a constructive trust could not be

imposed for the benefit of an insured's children notwithstanding the fact that the insured had been ordered by a state court to maintain his existing life insurance policy for the benefit of the three children of his first marriage. The insured initially complied with the state court divorce order but later designated his second wife as sole beneficiary. While the facts of *Ridgway* appear to mirror those in the present case, there is a significant difference between the two. *Ridgway* concerned the Serviceman's Group Life Insurance Act (SGLIA). As will be discussed *infra*, SGLIA sought to provide benefits for purposes other than those sought through the enactment of FEGLIA. Further, SGLIA has some important differences from FEGLIA which render it a more restrictive law.

Because an examination of the intent of Congress is the proper method of interpreting a federal statute, *see Stribling v. U.S.*, 419 F.2d 1350, 1352 (8th Cir.1969), we must consider the purposes and policy of FEGLIA in order to determine whether Congress intended the Act to preempt state law claims.[2] At the same time, it is instructive also to consider the purpose and policy of SGLIA, so that we may determine whether the reasoning in *Ridgway* is applicable to the matter at hand.

The enactment of SGLIA was an intention by Congress to make life insurance coverage available to active duty military personnel in combat zones during the Vietnam war. *Rollins v. Metropolitan Life Insurance Co.*, 863 F.2d 1346, 1351 (1988). SGLIA followed and essentially replaced the National Service Life Insurance Act of 1940 (NSLIA), the purpose of which was to provide government insurance, payable to a

---

**2.** We are aware that appellant's position is supported by some state and federal (district and circuit court) case law; however, we note that none of the cases on this topic is binding on this court. All of them have only persuasive, not precedential, value in the matter before us. *Commonwealth v. Griffin*, 407 Pa.Super. 15, 595 A.2d 101, 107 (1991) ("While decisions of the lower federal courts have a persuasive authority, they are not binding on Pennsylvania courts even where they concern federal questions); *Appeal of Penn–Lehigh Corp. Upon Washington Twp. Route 29, Lehigh County*, 191 Pa.Super. 649, 159 A.2d 56 (1960) (decisions of other states with identical issues are not binding on Pennsylvania courts).

service person's beneficiary, in an effort to "directly enhance the morale of the serviceman," a legitimate purpose within the congressional power to maintain a national defense. *Wissner v. Wissner*, 338 U.S. 655, 660, 70 S.Ct. 398, 400, 94 L.Ed. 424 (1950).

■ Federal law often seeks to afford special protections to military personnel. The Soldiers' and Sailors' Civil Relief Act, 50 U.S.C.App. § 501 et seq., grants service persons a variety of special protections, including the appointment of an attorney prior to the entry of a judgment in a divorce proceeding, the grant of a stay, postponement or suspension in the payment of taxes, fines, insurance premiums and other civil obligations, and numerous other protections unique to this specific group of citizens. In recognition of the federal government's desire to afford such special protections, this Commonwealth places additional burdens on litigants to comply with and foster the federal laws. *See* Pa.R.Civ.P. 1920.46 (requiring plaintiff in a divorce action to file an affidavit of non-military service before entering a default judgment). Pennsylvania is cognizant of and fully supports these special protections afforded military personnel. As stated in *Wissner, supra*, the provisions of SGLIA advance those protections.

In contrast, when FEGLIA was first presented in 1954, then President Eisenhower stated that the Act had two main purposes. First, the Act allowed federal employees to "carry out their responsibilities to their families." Second, the coverage provided "an essential element in the development of a comprehensive personnel program that applies to Government service the best practices of progressive, private employers." *Kidd v. Pritzel*, 821 S.W.2d 566, 568 (1991) (citing 1954 U.S.Code Cong. & Admin.News, Volume 2 at 3053).

Not only was FEGLIA designed to put federal employees on par with private company workers, *see Rollins*, 863 F.2d at 1352 ("FEGLIA is therefore best viewed as the public service analog to private group insurance"), but its designation of beneficiary provision was adopted to prevent administrative

difficulties for the Government (and the insurer) in deciding who should receive the proceeds of a policy. *See Kidd,* 821 S.W.2d at 569. The regulation addressing the naming of beneficiaries then, must be interpreted as an effort to advance this purpose. *Id.* at 574 (only reasonable applicability of § 870.902 is to promote expeditious payment of claims and relieve administrative burdens).

We find the differences in purpose underlying the two Acts to be significant. Also of significance is the fact that SGLIA includes an anti-attachment provision where FEGLIA does not. The provision exempts SGLIA proceeds from taxation, creditors' claims, attachment, levy and seizure by any legal or equitable process before *or after receipt by the beneficiary.* 38 U.S.C. § 1970(g) (emphasis supplied). The *Ridgway* court, while holding the anti-attachment provision to be an independent ground for its refusal to impose a constructive trust, stated that "any diversion of the proceeds ... by means of a court-imposed constructive trust would ... operate as a forbidden seizure of the proceeds." *Ridgway,* 454 U.S. at 60, 102 S.Ct. at 57. There is no comparable FEGLIA provision preventing the attachment of proceeds once they reach the named beneficiary.

■ With the knowledge of Congress' purpose in enacting FEGLIA, we turn now to the standard by which we are to determine whether and to what extent federal preemption occurs. "State family and family-property law must do major damage to clear and substantial federal interests before the Supremacy Clause will demand that state law be overridden." *United States v. Yazell,* 382 U.S. 341, 352, 86 S.Ct. 500, 506, 15 L.Ed.2d 404 (1966). It is beyond question that the Commonwealth's interest in upholding, enforcing and encouraging property settlement agreements is compelling. *See Hundertmark v. Hundertmark,* 372 Pa. 138, 93 A.2d 856 (1952). It is especially compelling when the person the parent agreed to provide for is that parent's child. *See Torchia v. Torchia,* 346 Pa.Super. 229, 499 A.2d 581 (1985) (children entitled to proceeds from father's insurance policy even though he changed beneficiary to his second wife). As in *Torchia,* appellee's

cause of action in this matter was based upon his equitable interest in the proceeds of the policy which had been vested in him by his father's agreement. *Id.* at 235, 499 A.2d at 584.

We do not believe that a state court-imposed constructive trust contravenes any of the federal interests underlying FEGLIA. Indeed, imposition of the trust insures that father carries out the responsibilities to his family which he has not only by virtue of his status as father but also by virtue of his voluntary promise in the Agreement. Further, there is no concern that the government or the insurance company will encounter any administrative difficulties as a result of our holding today. Appellant, as named beneficiary, was entitled to receive the proceeds from father's policy. Upon payment to the named beneficiary, the government and the insurer are through with their duties and no longer are involved in the disposition of the proceeds. However, in the absence of an anti-attachment provision, the state is not precluded from "attaching" those proceeds through the imposition of a constructive trust after receipt by the beneficiary.[3]

We have read with interest the cases cited by appellant which hold that the provisions of FEGLIA and rules promulgated thereunder preempt state domestic relations orders mandating that a specific beneficiary be named or remain as named. *See Dean v. Johnson,* 881 F.2d 948 (10th Cir.), *cert. denied,* 493 U.S. 1011, 110 S.Ct. 574, 107 L.Ed.2d 569 (1989); *Mercier v. Mercier,* 721 F.Supp. 1124 (D.N.D.1989); *O'Neal v. Gonzalez,* 653 F.Supp. 719 (S.D.Fla.1987), *aff'd,* 839 F.2d 1437 (1988); *Metropolitan Life Insurance Co. v. McShan,* 577 F.Supp. 165 (N.D.Cal.1983); *Knowles v. Metropolitan Life Insurance Co.,* 514 F.Supp. 515 (N.D.Ga.1981).

We believe those cases followed the holding in *Ridgway* without careful consideration of the significant differences between FEGLIA and SGLIA. We find that the distinctions between the two statutes, and the policies underlying them, provide ample support for our holding in this matter. Further, we are confident that Congress did not intend that the

3. If Congress wished to prevent such attachment it could have included in FEGLIA an anti-attachment provision similar to that in SGLIA.

vast number of federal employees in this country be permitted to enter into voluntary, state court-sanctioned agreements concerning the care and welfare of their children and then shirk completely the duties imposed by those agreements. The federal interest in doing so is far too minimal and the damaging impact to state domestic relations law far too grave.

Order affirmed.