**Thomas MITCHELL, Appellee,**

v.

**William MOORE, III, Appellant.**

Superior Court of Pennsylvania.

Argued March 3, 1999.

Filed April 12, 1999.

Delores M. Troiani, Paoli, for appellant.

John L. Lachall, West Chester, for appellee.

Before MCEWEN, President Judge, and POPOVICH, J., and CIRILLO, President Judge Emeritus.

CIRILLO, President Judge Emeritus:

¶1 William Moore, III (Moore), appeals from the order entered in the Court of Common Pleas of Chester County denying his post-trial motions and entering judgment on a jury verdict of $130,000.00 awarded to Appellee, Thomas Mitchell (Mitchell). We affirm in part and reverse in part.

¶2 Thomas Mitchell and William Moore first met in 1980; the two men quickly developed a romantic relationship. Moore resided in Elverson, Pennsylvania and Mitchell in South Carolina. In the spring of 1981, Mitchell accepted Moore's invitation to spend his "off season"[1] at Moore's Chester County farm. By 1985, Mitchell had permanently moved to Elverson, where he resided at Moore's farm without paying rent, worked a full-time job with a company located in Lancaster, Pennsylvania, and assisted Moore in maintaining his house and farm. Among other things, Mitchell took care of the farm animals, which included aiding in the breeding of sheep and birds. In 1990, Mitchell enrolled at Penn State University for graduate studies. As a result of his aca-

demic schedule, he was unable to run the sheep and bird businesses or maintain the farm. Soon thereafter, the parties' relationship soured; Mitchell moved out of Moore's residence in June of 1994.

¶3 In 1995, Mitchell brought an action against Moore sounding in fraud, *quantum meruit*, and implied contract. Specifically, Mitchell sought compensation, in the form of restitution, for the services he rendered to Moore throughout the thirteen years the two men lived together on the farm. In his complaint, Mitchell alleged that Moore had: promised him compensation for his services rendered to maintain and operate his farm; agreed to compensate him for his help in running an antique cooperative (co-op) that Mitchell had purchased; promised him future compensation and the devise of property in a will and codicil; and failed to compensate him for monetary contributions he had made towards Moore's purchase of real estate on Amelia Island, Florida.

¶4 In response to Mitchell's action, Moore filed preliminary objections seeking a demurrer. The court granted the objections in part and denied the objections in part, striking Mitchell's claim of fraud for lack of specificity, *see* Pa.R.C.P. 1019(b), but granting Mitchell leave to file an amended complaint. Mitchell filed an amended complaint, now including only counts for *quantum meruit*/unjust enrichment[2] and implied contract. Moore filed a counterclaim seeking $139,300.00 representing reasonable rent for the 139 months Mitchell lived on his farm rent-free and as compensation for various utility and telephone bills, taxes, car payments, and other miscellaneous expenses paid by Moore on Mitchell's behalf.

---

1. Mitchell was a tobacco broker in South Carolina. He did not work during the winter months.

2. A cause of action in quasi-contract for *quantum meruit*, a form of restitution, is made out where one person has been unjustly enriched at the expense of another. *Feingold v. Pucel-*

*lo*, 439 Pa.Super. 509, 654 A.2d 1093, 1095 (1995) (Beck, J., concurring) (citation omitted). Therefore, a claim of *quantum meruit* raises the issue of whether a party has been unjustly enriched, and in order to prove such claim a party must successfully prove the elements of unjust enrichment discussed *infra*.

¶ 5 After a jury trial, a verdict was rendered in favor of Mitchell on the basis of unjust enrichment and against Moore on the counterclaim. Moore filed post-trial motions seeking, among other remedies, a judgment in his favor; these motions were denied by the trial court. Moore filed a timely appeal, raising the following issues for our consideration:

(1) Whether the verdict was against the weight of the evidence in that:

(a) appellee-plaintiff failed to produce evidence of an express contract;

(b) appellee failed to prove an implied contract;

(c) the nature of the relationship rebutted the presumption of a promise to pay and therefore, appellee failed to prove unjust enrichment; and

(d) appellee failed to prove that appellant wrongfully secured or passively received benefits that would be unconscionable for him to retain?

(2) Whether the trial court committed reversible error by failing to instruct the jury concerning evidence of the will and its codicil?

(3) Whether the trial court committed error requiring the grant of a new trial by permitting the jury to consider claims prior to 1991 that were barred by the statute of limitations?

(4) Whether the trial court committed error in failing to grant appellant's motion for directed verdict based upon public policy (palimony)?

(5) Whether appellant is entitled to remittitur in that the verdict is not supported by the evidence?

(6) Whether appellant is entitled to a new trial on his counterclaim as the verdict was against the weight of the evidence?

¶ 6 In reviewing a denial of judgment notwithstanding the verdict, an appellate court must decide whether there was sufficient evidence to sustain the verdict; our scope of review is very narrow: all evidence and all reasonable inferences drawn therefrom must be considered in the light most favorable to the verdict winner. *Johnson v. Hyundai Motor America*, 698 A.2d 631 (Pa.Super.1997). Judgment notwithstanding the verdict can be entered only if the movant is entitled to judgment as a matter of law or if evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. *Jara v. Rexworks, Inc.*, 718 A.2d 788 (Pa.Super.1998) (citations omitted). We will reverse a trial court's grant or denial of a judgment notwithstanding the verdict only when we find an abuse of discretion or an error of law that controlled the outcome of the case. *Id.*, citing *Jones v. Constantino*, 429 Pa.Super. 73, 631 A.2d 1289 (1993).

¶ 7 Mitchell's claim for restitution for services rendered lies not upon an express contract or written agreement, but, rather, upon the equitable theory of unjust enrichment. Further, we may not make a finding of unjust enrichment, as has the trial court, where a written or express contract between parties exists. *See First Wisconsin Trust Co. v. Strausser*, 439 Pa.Super. 192, 653 A.2d 688 (1995). We, therefore, confine our review to whether the court properly found Mitchell entitled to compensation under the legal theory of unjust enrichment.

¶ 8 "Unjust enrichment" is essentially an equitable doctrine. *Styer v. Hugo*, 422 Pa.Super. 262, 619 A.2d 347 (1993), *aff'd*, 535 Pa. 610, 637 A.2d 276 (1994). Where unjust enrichment is found, the law implies a contract, which requires the defendant to pay to the plaintiff the value of the benefit conferred. *Schenck v. K.E. David, Ltd.*, 446 Pa.Super. 94, 666 A.2d 327 (1995). The elements necessary to prove unjust enrichment are:

(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. (citations omitted). The application of the

doctrine depends on the particular factual circumstances of the case at issue. **In determining if the doctrine applies, our focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.** *Id.*, 666 A.2d at 328. *Accord Torchia v. Torchia*, 346 Pa.Super. 229, 499 A.2d 581, 582 (1985) ("[t]o sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either 'wrongfully secured or passively received a benefit that it would be unconscionable for her to retain.'") (citation omitted).

¶ 9 In its opinion, the trial court clearly determines that a benefit was conferred upon Moore as a result of the extensive labor and services Mitchell provided him on his farm and in his home. The critical question, with regard to whether as a result of this benefit Moore was unjustly enriched, was answered in the positive by the court as follows:

> Assuming the jury established that a benefit had been conferred by Plaintiff [Mitchell] and received by Defendant [Moore], they only had to determine that Defendant's acceptance of these benefits and failure to compensate Plaintiff resulted in an unconscionable bargain. The jury was aware that Defendant [sic] moved hundreds of miles away from his job, house, friends and family to a different region of the country where he took on a new job and did work on Defendant's [Moore's] farm. It is not unreasonable to suggest that the jury believed Plaintiff [Mitchell] in that he made that life-altering change based on something besides his desire to develop his relationship with Defendant [Moore]. Given this potential scenario, it is likely that the jury could have found that the lack of compensation Plaintiff [Mitchell] received amounted to an unconscionable bargain and therefore, Defendant's [Moore's] unjust enrichment.

¶ 10 "It has been said, an intention to pay *for* work done will be assumed, except in the case of parent and child. Where, however, it is apparent that the parties, though not so related by blood, in reality bore like connection to each other, the implication does not arise." *Brown v. McCurdy*, 278 Pa. 19, 22, 122 A. 169, 170 (1923). While it has been held that the presumption of gratuitous services does not automatically arise in a daughter-in-law/mother-in-law context, where a claimant has become "part of the family" the contrary is true. *Id.*

¶ 11 Both parties concur that when Mitchell moved into Moore's home on a full-time basis, Moore paid many of Mitchell's bills, including car payments, VISA and SEARS card charges, and phone bills. Moreover, Moore claims that Mitchell became part of his own family; Mitchell, himself, admits to having celebrated all the major holidays with Moore's immediate family and received gifts from them on special occasions.

¶ 12 In *Brown, supra,* the law and facts centered around the issue of whether a presumption of payment, based upon an express contract to pay for services rendered by a daughter-in-law to her mother-in-law, had been successfully established based upon the evidence at trial. The court demanded strict proof of an express contract in order to overcome any presumption that the services were gratuitous. Although the instant case is not based upon either an express contract or written agreement, we find the principles espoused in *Brown* equally applicable, namely, in order to prove that the defendant in the present case had been **unjustly** enriched by plaintiff's actions and services, there must be some convincing evidence establishing that plaintiff's services were not gratuitous.

¶ 13 We first note that Mitchell had complete access to a large farm house where he lived rent-free and virtually unencumbered by any utility expenses. The nature and amount of benefits that plaintiff received from living at Moore's farm rebuts any presumption that the benefit conferred upon Moore was unjust. In

fact, the advantages plaintiff obtained were compensation enough for all the work he offered to do on the farm; further, Mitchell derived an obvious personal benefit by living with the defendant, his partner for thirteen years, at his farm.[3]

¶ 14 Having found no evidence which would imply that Moore's services were anything but gratuitous, we cannot agree with the trial court that a theory of unjust enrichment has been proved. While defendant indisputably bequeathed plaintiff his farm (found within the provisions of two wills that were later supplanted by a codicil), the gift was exactly that, an intention to reward the plaintiff through a testamentary provision.[4] *See Wise v. Martin*, 232 Pa. 159, 81 A. 184 (1911) ("[l]oose declarations made to outside parties, indefinite understandings, suggested gratuities, anticipated benefactions and testamentary intentions not carried out, about which there is some vague and unconvincing testimony, are not sufficient to establish an express contract, either to pay for the extra services at the death of the testatrix or to provide for such compensation by legacy."). Such bequest is not equivalent to a finding that the defendant intended to compensate the plaintiff for his services and that upon failure to remit such monies the defendant became unjustly enriched. *See Meehan v. Cheltenham Township*, 410 Pa. 446, 450, 189 A.2d 593, 596 (1963) ("[t]he mere fact that one party benefits from the act of another is not of itself sufficient to justify restitution."); *see also Torchia, supra* (to

sustain a claim of unjust enrichment, the claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that it would be unconscionable for the party to retain).

¶ 15 Furthermore, the defendant testified that the plaintiff himself suggested that he move in with the defendant because he could not afford to rent an apartment on his own at the time. He, as well as the defendant, thought such potential living arrangement would give the two men more time to foster their relationship. In fact, upon learning of plaintiff's potential job opportunity in nearby Lancaster, Pennsylvania, the defendant anticipated that the two parties would be able to grow closer in a permanent "live-in" situation—another indication that there existed no expectation of payment for plaintiff's voluntary work on the defendant's farm. Moreover, plaintiff testified that he never asked the defendant for compensation for his services and that the defendant never told him he would pay him for his help around the house and the farm.[5]

¶ 16 To solidify the fact that the plaintiff's actions were *gratuitous services rendered* during a "close, personal" relationship, the plaintiff testified at trial that after he moved in and began to help around the farm, the defendant told him he "did a great job, that he appreciated what I [plaintiff] did, and it was for – it made the house much better looking, it kept it stable, and that **we were building**

---

3. Plaintiff's own testimony at trial stated that he moved in with the defendant based upon the belief that he would be "provided for" by the defendant; to this end, plaintiff asserts that the defendant drew up a will "mak[ing] sure that [he] was protected for all the things that [he] had done for him in the past." He claims that he relied upon such financial security, thinking that it would be "a forever and forever situation." Such testimony seems to advance a theory of promissory estoppel, not unjust enrichment. Plaintiff, however, did not allege such a theory in his complaint; we, therefore, will not consider such a claim.

4. *Cf. Walls' Appeal*, 111 Pa. 460, 464, 5 A. 220 (1886) ("an action will lie against the estate of a decedent for breach of an agreement to make provision by will for one who, at the request of the promis[o]r, has performed services for him .... Such contract may be enforced only when it is clearly proved by direct and positive testimony, and where its terms are definite and certain.").

5. At trial, Moore characterized Mitchell's work on his farm during the period where he was living there only part-time as "voluntary," stating that "he [Mitchell] said he just couldn't sit around and sun bathe all day, he had to do something."

**a future together and some day it would all be worth it for me [plaintiff]."** While Mitchell would characterize the nature of the parties' relationship as a type of business venture ·between partners, the evidence at trial indicates a very different aspect of their lives. As Mitchell, himself, testified, he had a "romantic or sexual aspect to his relationship with Dr. Moore." Furthermore, the parties conducted themselves around the home like parties in a loving relationship; they shared household chores, cooked dinners for each other, bestowed gifts upon one another, attended events together, and shared holidays and special occasions with Moore's family. Most potent, however, is the following language used in a letter written by Mitchell to Moore sometime in 1993, "The time I have given you breaking my back with the house and grounds were just that, **a gift to our relationship.**" Moore testified that Mitchell was "his lover and we were living together as partners, and I felt like anything I could do for him, you know, gave me pleasure." To find restitution (compensation) proper ·for services performed in such a relationship, we would curtail the freedom associated in forming new personal bonds based upon the important facet of mutual dependence.

 ¶ 17 After a review of the record in this case, including the pivotal testimony of both Mitchell and Moore, we cannot find that the defendant benefited unjustly from plaintiff's services. While we do not attempt to characterize the services rendered in all unmarried couple's relationships as gratuitous, we do believe that such a· presumption exists and that in order to recover restitution for services rendered, the presumption must be rebutted by clear and convincing evidence. The basis of this presumption rests on the fact that services provided by plaintiff to the defendant are not of the type for which one would normally expect to be paid, nor did they confer upon the defendant a benefit that is unconscionable for him to retain

without making restitution to the plaintiff. *See Feingold, supra* (Beck, J., concurring).

 ¶ 18 The circumstances of this case do not require the law to imply a contract in order to avoid an injustice. *See Feingold,* 654 A.2d ,at 1095 (Beck, J., concurring) ("unlike true contracts, quasi-contracts are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. They are obligations created by law for reasons of justice."), *citing Schott v. Westinghouse Elec. Corp,* 436 Pa. 279, 290–93, 259 A.2d 443, 449 (1969). Accordingly, we reverse the trial court's verdict in favor of plaintiff; the verdict should have been rendered in defendant's favor. *Jara, supra.* We affirm the court's denial of defendant's counterclaim on the same basis. The various benefits plaintiff received over the parties' thirteen year relationship were also gratuitous in nature; the plaintiff did not "wrongfully secure a benefit that is unconscionable for him to retain." *Torchia, supra.*

¶ 19 Order reversed in part and affirmed in part.[6] Jurisdiction relinquished.

---

**6.** Having determined that we must reverse the jury's verdict in favor of plaintiff, we need

not address the remaining issues raised in appellant's brief based upon trial court error.