**In re FORMAN INDUSTRIES, INC., Debtor.**

**Commonwealth Packaging Company, Plaintiff,**

**v.**

**PNC Bank, National Association and Forman Enterprises, Inc., Defendants.**

**Bankruptcy No. 00–20523–BM.**
**Adversary No. 01–2315–BM.**

United States Bankruptcy Court, W.D. Pennsylvania.

July 19, 2002.

---

seeking to recover from defendant PNC Bank the amount of a post-petition check PNC refused to honor. Debtor Forman Enterprises, Inc. had issued this check to pay for custom-made containers manufactured by plaintiff and used by debtor in post-petition sales.

In spite of the fact that we will enter judgment in favor of PNC and against CPC for reasons set forth in this memorandum opinion, we feel compelled to state that this decision does not satisfy our sense of "perfect justice". Notwithstanding PNC's hollow protests to the contrary, it appears as if the bankruptcy case itself has been brought in large part for the benefit of PNC. PNC clearly held the debtor's feet to the fire as it relates to the consensual financing order. Plaintiff's actions directly benefit PNC in that the merchandise would not have been sold on a retail basis without plaintiff's product. The proceeds of said sales were utilized to pay down PNC's debt. All of the invoices submitted during the period in question were honored by PNC except plaintiff's. Clearly the matter is curious. In spite of the above, we are bound to apply the law and facts to theories advanced and we reach the conclusion that the verdict must favor defendant.

John M. Steiner, Leech Tishman Fuscaldo & Lampl, LLC, Pittsburgh, PA, for plaintiff.

Michael A. Shiner, Tucker Arensberg, P.C., Pittsburgh, PA, for defendant PNC Bank, N.A.

### MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Commonwealth Packaging Company ("CPC") has brought this adversary action

– FACTS –

Debtor operated retail outlet clothing stores under various trade names in thirty-four states prior to January of 2000.

On January 26, 2000, debtor filed a voluntary chapter 11 petition. PNC was identified on the schedules as having an undisputed pre-petition secured claim in the amount of $13,850,848. Its claim arose out of an agreement debtor executed in October of 1998 which granted PNC a security interest in all of debtor's merchandise. CPC was identified on the schedules as

having an undisputed pre-petition general unsecured claim in the amount of $76,192 for packaging products it had sold to debtor for use in debtor's business.

Debtor brought a first-day motion to approve the immediate closing of certain of its stores and to commence going-out-of-business sales at certain other stores. The motion was granted on January 28, 2000. Debtor also brought a first-day motion to use PNC's cash collateral, to approve the terms of a post-petition financing agreement with PNC, and to grant PNC senior liens and an administrative priority claim. The motion was granted on an interim basis on January 28, 2000, and several times thereafter. A final order approving the financing agreement was issued on April 12, 2000.

On June 28, 2000, debtor ordered custom-printed shopping bags from CPC for use in its stores during liquidation of its merchandise. The total cost of the goods ordered was $34,632.59. CPC, like many of debtor's other vendors, required an advance deposit. After debtor paid an advance deposit in the amount of $7,480.00, CPC shipped the goods on August 16, 2000, and a few days later issued an invoice in the amount of $27,152.59 for the outstanding balance. Debtor subsequently issued a check payable to CPC in this amount. PNC honored the check the first time it was presented by CPC on September 25, 2000.

On November 15, 2000, debtor ordered additional custom-printed shopping bags from CPC for use in its retail outlet stores. CPC delivered the goods on November 30, 2000, and shortly thereafter presented debtor with an invoice in the amount of $23,329.60.

PNC notified debtor on November 29, 2000, that debtor was in default with respect to its obligations arising under the final order entered on April 12, 2000, and reserved the right to stop advancing funds to debtor under the terms of the financing agreement and final order. PNC did not, however, cease advancing funds to debtor but instead continued making advances on an *ad hoc* basis pursuant to a borrowing formula whose specifics are not of record in this case..

On December 21, 2000, debtor issued a check payable to CPC in the amount of $23,329.60 as payment for the additional custom-printed shopping bags CPC had delivered. The check was drawn on a controlled disbursement account—i.e., a so-called zero balance account—debtor had with PNC Bank.

CPC deposited the check into an account it had with a bank other than PNC on December 26, 2000. Liberty National Bank presented the check to PNC on December 27, 2000. PNC provisionally settled the check and wired the funds to Liberty National Bank on the day of its presentment.

The checks presented to PNC that day resulted in an overdraft of debtor's controlled disbursement account. PNC refused to advance funds for the overdraft and returned the check to the local branch of the Federal Reserve Bank before midnight of the next banking day and notified Liberty National Bank before midnight of the next banking day that it had not honored the check. CPC was notified by its own bank on December 29, 2000, that PNC had not honored the check.

A total of 497 checks drawn on debtor's controlled disbursement account were presented to PNC in December of 2000. The only check drawn on the account which PNC did not honor during that month was the check payable to CPC.

CPC deposited the check a second time into its account at its own bank on January 11, 2001. Liberty National Bank present-

ed the check to PNC for the second time on January 16, 2001. PNC provisionally settled the check on the day of its presentment and wired the funds to Liberty National Bank.

The checks presented to PNC on January 16, 2001, once again resulted in an overdraft of debtor's controlled disbursement account. As was the case the first time, PNC refused to advance funds to cover the overdraft. PNC again returned the check to the local branch of the Federal Reserve Bank prior to midnight of the next banking day and notified Liberty National Bank that it would not honor the check. CPC was notified by its own bank on January 18, 2001, that PNC again had not honored the check.

A total of 283 checks drawn on debtor's account were presented to PNC in January of 2001. The only check PNC did not honor during that month was the check issued to CPC.

Debtor's bankruptcy case was converted to a chapter 7 proceeding on June 6, 2001, and pursuant to the procedures in this court, the case was transferred by the jurist handling same in chapter 11 to this writer who will complete same in chapter 7.

CPC commenced the above adversary action against PNC on July 30, 2001, by filing a five-count complaint concerning PNC's refusal to honor the above check in the amount of $23,329.60.

Count I asserts that the final order of April 12, 2000, obligated PNC to provide financing for debtor's purchase of the custom-printed shopping bags and maintains that PNC breached this obligation by refusing to honor the above check paying for the goods.

Count II asserts that PNC was unjustly enriched when it permitted debtor to purchase goods to facilitate the liquidation of its collateral and then refused to honor the check to pay for the goods.

Count III asserts that PNC had a duty under the final financing order to act fairly and in good faith with respect to parties who dealt with debtor in light of the financing order. CPC contends that PNC breached this duty of good faith and fair dealing when it refused to honor the above check.

Count IV asserts that PNC falsely represented in the financing order that it would finance debtor's post-petition purchase of goods and that it fraudulently induced CPC to deliver the goods to debtor.

Count V asserts that PNC is accountable to it for the amount of the above check in accordance with 13 Pa.C.S.A. § 4302 for failing to dishonor and return the check to it in a timely manner.

Trial of the adversary action occurred on May 6, 2002, at which time both sides were given an opportunity to offer evidence on the issues in the case.

## – DISCUSSION –

### COUNT I.

### *Breach of the Financing Agreement and Final Order*

■ CPC maintains in Count I that the provisions of the order of April 12, 2000, obligated PNC to provide financing for debtor to purchase goods in the ordinary course of debtor's business while it was in bankruptcy. By refusing to honor the above check in the amount of $23,329.60, CPC asserts, PNC breached this obligation. It is not obvious that CPC, which was not a party to the financing agreement that gave rise to the final order, can assert a cause of action alleging that one of the parties to the agreement breached it. No one has argued that it is a third-party

beneficiary contract and we do not find it as such. CPC merely asserts that it can do so without citing to any authority for the proposition. Even if it can do so, however, Count I must fail.

Count I relies on the premise that the final order *obligated* PNC to provide financing for debtor to purchase goods for use in the ordinary course of its business while it was in bankruptcy. According to CPC's post-trial brief, debtor's obligation to provide such financing arose under paragraph 12 of the final order, which provides in part as follows:

The Debtor, Lender and Creditor's [sic] Committee have stipulated and agreed as follows, and seek the relief requested herein to prevent immediate and irreparable harm to Debtor's estate and to facilitate the continuation of the Debtor's business: ...

12. The Debtor has requested that Lender make loans and advances and provide other credit accommodations to the Debtor and consent to the use of Cash Collateral, in order to provide funds to be used by the Debtor to make payments required to operate its business for the purchase of inventory to be sold by the debtor in the ordinary course of business....

We do not understand this provision as *obligating* or *requiring* PNC to provide financing under any circumstance for debtor to purchase goods for use in the ordinary course of its business during bankruptcy. As we understand it, the final order only *authorizes* PNC to provide such financing. Paragraph 12 merely stipulates that debtor has requested PNC to make advances so that debtor can purchase goods for use in the ordinary course of its business. It does not stipulate that PNC is obligated to provide such financing.

CPC has not pointed to any other provision of the final order which gives plaintiff

standing as a third-party beneficiary or which mandates that PNC shall provide such financing. We have reviewed the final order, which is thirty-two pages in length and chock-a-block full of minute detail, and have found no other provision therein which in our estimation would obligate PNC to provide funds to cover the check debtor issued to CPC to pay for the shopping bags. To the contrary, the thrust of said order appears to grant PNC the dominant hand in opening and closing the financing flow and determining the events of debtor's default.

We conclude in light of the foregoing that Count I of the complaint fails because CPC has failed to establish that the final order obligated PNC to provide financing for any and all goods debtor purchased during bankruptcy for use in the ordinary course of its business

## COUNT II.

### *Unjust Enrichment*

CPC asserts in Count II that debtor's use of the shopping bags it provided benefitted PNC by maximizing the liquidation value of its collateral and that PNC was unjustly enriched when it refused to honor the check paying for the goods.

Unjust enrichment is an equitable doctrine. *Mitchell v. Moore,* 729 A.2d 1200, 1203, (Pa.Super.1999), *appeal denied,* 561 Pa. 698, 751 A.2d 192 (2000). Where unjust enrichment is found, the law implies a contract, usually referred to as a quasi-contract or contract implied-in-law, which requires a defendant to make restitution to plaintiff *in quantum meruit. Schenck v. K.E. David, Ltd.,* 446 Pa.Super. 94, 97, 666 A.2d 327, 328 (1995), *appeal denied,* 544 Pa. 660, 676 A.2d 1200 (1996).

To prevail on a claim for unjust enrichment, plaintiff must establish that

the party from whom recovery is sought either wrongfully or passively secured a benefit whose retention without restitution would be unconscionable. *Torchia v. Torchia*, 346 Pa.Super. 229, 233, 499 A.2d 581, 582 (1985).

■ To prevail on a claim for unjust enrichment, the party invoking the doctrine must establish that: (1) a benefit was conferred on defendant by plaintiff; (2) defendant retained the benefit; and (3) it would be inequitable for defendant to retain the benefit without paying its value. *Schenck*, 446 Pa.Super. at 97, 666 A.2d at 328. A showing of knowledge or wrongful intent on the part of the party benefitted is not required. The focus is on the resultant unjust enrichment. *Torchia*, 346 Pa.Super. at 233, 499 A.2d at 582. Application of the doctrine requires a fact-intensive inquiry. *Id.*

■ The most significant aspect of the doctrine is that any enrichment a defendant enjoys must be unjust. It does not apply merely because the defendant happened to benefit as a result of the actions of the plaintiff. *Styer v. Hugo*, 422 Pa.Super. 262, 268, 619 A.2d 347, 350 (1993), aff'd, 535 Pa. 610, 637 A.2d 276 (1994). Where, for instance, two parties enter into a contract which ultimately inures to the benefit of a third party and one of the contracting parties fails to perform, there is no right to restitution against the third party to remedy the contracting party's breach in the absence of misleading conduct by the third party. Absent such conduct, the third party may have been enriched, but not unjustly. *Meehan v. Cheltenham Township*, 410 Pa. 446, 450, 189 A.2d 593, 596 (1963); *also D.A. Hill Co. v. CleveTrust Realty Investors*, 524 Pa., 425, 434, 573 A.2d 1005, 1010 (1990).

■ It is uncontroverted that debtor was overdrawn on its account on the days the check was presented to PNC and that PNC was not willing to advance additional funds to debtor to "make good" all of the checks presented to PNC on those days.

PNC benefitted from the purchase of the shopping bags supplied by CPC to the extent that they were used to liquidate collateral that was subject to PNC's security interest. Perhaps debtor could not have sold its merchandise without the shopping bags provided by CPC. One might even say that PNC was enriched in this regard. We are not, however, willing to assert as a general proposition that a secured lender who refuses to provide debtor with post-petition financing to pay for goods that are used to liquidate the lender's collateral thereby *necessarily* is unjustly enriched.

The outcome might have been different with respect to Count I had CPC offered credible evidence indicating that the decision not to honor the check payable to CPC out of all the checks presented on those days was made by PNC and not by debtor. Had CPC established that the decision to single out its check for dishonor was made by PNC, we might be inclined to conclude that it would indeed be unconscionable or unjust for PNC to enjoy the benefit of having its collateral liquidated without having to honor the check paying for the shopping bags. Unfortunately for CPC, it failed to offer credible evidence on this point.

The sole evidence offered by CPC in support of its contention that PNC made the decision to dishonor the check payable to CPC out of all the checks presented on the days in question was contained in depositions taken of two of debtor's employees, both of whom pointed their fingers at PNC. Rather than having these individuals testify in person at trial, CPC chose to

offer their depositions. In so doing, CPC ignored our admonition that we might find it difficult, if not impossible, to assess their credibility.

PNC, by contrast, called one of its employees who testified under oath at trial that the decision to single out the check payable to CPC for dishonor was made by debtor and not by PNC. Although he unquestionably was not a neutral witness, we had an opportunity to observe him and to assess his credibility. His testimony on this matter was at least credible and was given more weight than was the contrary deposition testimony offered by CPC.

## COUNT III.

### *Breach of the Duty of Good Faith and Fair Dealing*

■ Count III asserts that PNC had a duty to deal with CPC fairly and in good faith and that PNC violated this duty when it refused to honor the above check.

According to CPC, PNC had a concomitant duty to deal fairly and in good faith with all post-petition creditors who relied on the final order in extending credit to debtor because paragraph 12 of the order imposed an obligation on PNC to provide funding for all of debtor's post-petition purchases of goods for use by debtor in the ordinary course of its business. CPC asserts that PNC violated its duty to deal with CPC fairly and in good faith when it singled out the check payable to CPC and refused to honor it while honoring all other checks presented in the two months when CPC presented it for settlement. .

Count III fails for numerous reasons. For instance, it relies on the premise that PNC had an obligation under the final order to provide financing for all of debtor's post-petition purchases of goods for use in the ordinary course of its business. We previously determined that PNC had

no such obligation but instead had discretion in the matter.

Also, for it to prevail on the claim asserted in Count III CPC would have to establish that PNC had sufficient control over debtor's affairs to determine which specific checks it would and would not honor out of all the checks drawn on debtor's account presented to it on a given day. We previously determined that debtor, not PNC, made this determination with respect to the check at issue in this case.

## COUNT IV.

### *Fraud in the Inducement*

CPC asserts in Count IV that PNC defrauded CPC when it refused to honor the above check to pay for the shopping bags.

■ Fraud consists "of anything calculated to deceive, whether by single act or combination, or by suppression of the truth, or suggestion of what is false, whether it be by direct falsehood or innuendo, by speech or silence, word of mouth, or look or gesture". *Moser v. DeSetta,* 527 Pa. 157, 163, 589 A.2d 679, 682 (1991). In essence it is "a misrepresentation fraudulently uttered with the intent to induce the action undertaken in reliance upon it, to the damage of its victim". *Id.*

■ A party asserting fraud has the burden of establishing the following: (1) that a representation; (2) which is material to the transaction at hand; (3) was made falsely, with knowledge of its falsity or with recklessness as to its truth or falsity: (4) with the intent of misleading another; (5) and that another justifiably relied on the misrepresentation; and (6) and suffered an injury that was proximately caused by the reliance. *Gibbs v. Ernst,* 538 Pa. 193, 207–08, 647 A.2d 882, 889 (1994).

The burden of proving common law fraud lies with the party asserting it. It must be established by clear and convincing evidence. *Rohm & Haas Co. v. Continental Casualty Co.*, 566 Pa. 464, 476, 781 A.2d 1172, 1179 (2001). Evidence is required that is "so clear, direct, weighty, and convincing as to enable the jury to come to a clear conviction, without hesitancy, of the truth of the precise facts of the issue". *Lessner v. Rubinson*, 527 Pa. 393, 400–01, 592 A.2d 678, 681 (1991). Because fraud rarely, if ever, can be shown by direct proof, it must be inferred from surrounding circumstances. *Rohm & Haas*, 566 Pa. at 477, 781 A.2d at 1179.

The cause of action asserted in Count IV fails because CPC has not established all of the above requirements of fraud by clear and convincing evidence.

To begin with, CPC has failed to establish clearly and convincingly that PNC represented to CPC that PNC would provide the financing necessary for debtor to pay CPC for the shopping bags with which CPC supplied debtor. CPC's assertion that PNC so represented is based on the final order dated April 12, 2000. According to CPC, PNC represented in the final order that it would provide financing so that debtor could pay for goods it purchased post-petition for use in the ordinary course of its business. We have reviewed the final order and find no provision therein which can be fairly construed as a representation on PNC's part that it would provide the requisite financing to pay a vendor for any goods the vendor sold to debtor for use in the ordinary course of debtor's business during the bankruptcy case.

CPC has failed to establish the first requirement of fraud even if PNC did so represent. The representation does not pertain to an existing fact but concerns what PNC will do in the future. Breach of a promise to do something in the future does not give rise to fraud. The representation must pertain to an existing fact for it to be fraudulent. *Booze v. Allstate Insurance Co.*, 750 A.2d 877, 880 (Pa.Super.2000). Any representation made by PNC in the final order pertaining to the financing of debtor's post-petition purchase of goods concerns what PNC *will do in the future*, not an existing fact, and consequently is not actionable as common law fraud.

The matter does not end there. Even if PNC did falsely represent to CPC that it would provide the requisite financing to pay CPC for the shopping bags debtor purchased from it, CPC has offered nothing demonstrating that PNC so represented with the intent to mislead CPC. The fact that PNC determined before debtor had ordered the shopping bags that debtor was in default of its obligations under the final order but did not file a notice of default with the court until after debtor had placed the order with CPC, without something more, does not suffice to establish the requisite intent to deceive. CPC did not offer the required "something more".

## COUNT V.

### *13 Pa.C.S.A. § 4302*

CPC deposited the above check from debtor with its own bank for the first time on December 26, 2000, but did not receive notice from its own bank that PNC had refused to honor it until three days later on December 29, 2000. CPC deposited the check with its own bank for the second time on January 11, 2001, but did not receive notice from its own bank that PNC once again had refused to honor it until seven days later on January 18, 2001.

13 Pa.C.S.A. § 4302 provides in relevant part as follows:

(a) General rule.—If an item is presented and received by a payor bank the bank is accountable for the amount of:

(1) a demand item . . . , whether properly payable or not, if the bank, in any case in which it is not also the depositary bank, retains the item beyond midnight of the banking day of receipt without settling for it or, whether or not it also is the depositary bank, does not pay or return that item or send notice of dishonor until after its midnight deadline.

CPC asserts in Count V that PNC is accountable to it for the full amount of the check—i.e., $23,329,60—even though debtor's account was overdrawn and PNC had refused to provide additional funds to cover the check because PNC did not return the check prior to the midnight deadline on each occasion of its presentment, as required by 13 Pa.C.S.A. § 4302.

The cause of action asserted in Count V lacks merit. PNC complied with the requirements of 13 Pa.C.S.A. § 4302 with respect to returning the above check or sending notice of its dishonor on each occasion the check was presented to it.

Although CPC deposited the check the first time into its account at a bank other than PNC on December 26, 2000, the first presentment of the check by Liberty National Bank did not occur until December 27, 2000. PNC provisionally settled the check before midnight of that same day. PNC subsequently revoked its provisional settlement of the check pursuant to 13 Pa.C.S.A. § 4302(a) upon determining that debtor was overdrawn. It returned the check to the local branch of the Federal Reserve Bank prior to the "midnight deadline"—i.e., prior to midnight of the banking day following the banking day on which it was received. *See* 13 Pa.C.S A. § 4104. By so doing, PNC relieved itself of accountability for the amount of the check pursuant to § 4302 with respect to its first presentment.

The outcome is the same for the second presentment of the check. Although CPC deposited the check with its own bank on January 11, 2001, for some unknown reason Liberty National Bank did not present the check to PNC until January 16, 2001. As was the case with the first presentment, PNC provisionally settled the check prior to midnight of the same banking day on which it was presented. PNC once again subsequently revoked the provisional settlement of the check pursuant to § 4302(a) upon determining that debtor was overdrawn. For the second time it returned the check to the local branch of the Federal Reserve Bank prior to midnight of the next banking day, thereby again relieving itself of accountability for the full amount of the check.

We conclude in light of the foregoing that PNC is not accountable to CPC for the full amount of the check it refused to honor on two separate occasions. In both instances it provisionally settled the check prior to midnight of the banking day on which it received the check and then revoked the settlement and returned the check prior to midnight of the following banking day.

CPC makes much ado about the interval between when it deposited the check with its own bank and when it was notified by its own bank that the check had not been honored. Its reliance upon these events is misplaced. The dates on which CPC deposited the check into an account at its own bank and on which it received notice from its own bank that the check had not been honored are not relevant to determining whether a payor bank such as PNC is accountable for the full amount of a check for purposes of § 4302. The relevant dates in this regard are when PNC received the check from the presenting bank

and when it settled or returned it to the presenting bank.

We conclude in light of the foregoing that judgment in this case must be entered in favor of defendant PNC and against plaintiff CPC.

An appropriate order shall issue.