**Phyllis HARDY, Alax Ketih Furnish, and Megan Jessica Furnish, by next friend Phyllis Hardy, Appellants,**

v.

**Mary Jo HARDY, Appellee.**

No. 51A01–1005–PL–248.

Court of Appeals of Indiana.

Jan. 25, 2011.

---

**8.** Because we have ruled in Guidant's favor, we need not address its contingent cross-ap- peal.

Benjamin L. Niehoff, Andrews Harrell Mann Carmin & Parker, P.C., Bloomington, IN, Attorney for Appellants.

Brad L. Rigby, Rigby Law Office, Huntingburg, IN, Attorney for Appellee.

## OPINION

BROWN, Judge.

Phyllis Hardy, Alax[1] Furnish, and Megan Furnish, by next friend Phyllis Hardy, (collectively, the "Plaintiffs") appeal the trial court's grant of Mary Jo Hardy's motion for summary judgment and the court's denial of their motion for summary judgment. The Plaintiffs raise two issues, which we revise and restate as whether the court erred in granting Mary Jo's motion for summary judgment and in denying the Plaintiffs' motion for summary judgment. We affirm.

The relevant facts as designated by the parties follow. Carlos and Phyllis Hardy were married on December 28, 1967. Carlos worked at NSWC Crane and had a life insurance policy with Federal Employees' Group Life Insurance ("FEGLI") through his employer.[2]

On February 5, 1998, the Ripley Circuit Court entered a decree of dissolution of marriage. The decree stated:

IT IS FURTHER ORDERED BY THE COURT that Carlos Hardy shall maintain the Met Life Insurance Policy which has been held during the marriage. Phyllis Hardy and the parties' grandchildren shall each be designated as equal beneficiaries of the policy. Phyllis Hardy shall continue to maintain the life insurance which she has held during the marriage.... Neither party shall change any of the life insurance coverage on either policy.

Appellants' Appendix at 47. The decree also incorporated a Property Settlement Agreement which stated in part:

IT IS FURTHER STIPULATED AND AGREED BETWEEN THE PARTIES that Carlos Hardy shall maintain the Met Life Insurance Policy which has been held during the marriage. Phyllis Hardy and the parties' grandchildren shall each be designated as equal beneficiaries of the policy. Phyllis Hardy shall continue to maintain the life insurance which she has held during the marriage. Carlos Hardy and the parties' grandchildren shall each be named equal beneficiaries of that policy. Neither party shall change any of the life insurance coverage on either policy.

Id. at 50. The MetLife policy mentioned in the Property Settlement Agreement was actually the FEGLI policy.[3]

On September 29, 2000, Carlos and Mary Jo were married. On October 4, 2000, Carlos designated Mary Jo as the named beneficiary on his FEGLI policy by submitting a Designation of Beneficiary

---

1. Alax is spelled "Alex" in the trial court's order and "Alax" in the filings by the Plaintiffs.

2. Neither party designated the life insurance policy.

3. Phyllis's affidavit which was designated by the Plaintiffs states: "I was aware of no other life insurance policy insuring the life of Carlos Hardy during our marriage or afterward. The MetLife Insurance Policy set forth in the divorce decree was, in actuality, the policy of life insurance Carlos had through FEGLI." Appellants' Appendix at 61. The affidavit also stated: "MetLife administers the FEGLI policy, which was the reason the divorce decree referred to a 'MetLife Policy.'" Id.

form. On September 17, 2007, the Martin Circuit Court entered a decree of dissolution of the marriage between Carlos and Mary Jo. The decree incorporated a Contract and Agreement, which stated:

9. *LIFE INSURANCE:* That each of the parties hereto shall be awarded any and all life insurance policies which he or she has securing his or her own respective life. That each party shall execute any documents necessary to remove his or her name as beneficiaries from each other's respective life insurance policies.

*Id.* at 56.

Carlos died on August 9, 2008. At that time, Carlos and Phyllis had two grandchildren: Alax Furnish and Megan Furnish. The insurance coverage of the FEGLI policy totaled $98,000.00. Mary Jo was the named beneficiary on the policy.

On January 7, 2009, the Plaintiffs filed a Complaint for Declaratory Judgment/Constructive Trust over Insurance Proceeds. On June 4, 2009, the Plaintiffs filed a motion for summary judgment and argued that the doctrines of waiver and estoppel prevented any recovery by Mary Jo. On July 2, 2009, Mary Jo filed a countermotion for summary judgment and argued that the Federal Employees' Group Life Insurance Act ("FEGLIA") preempted state law. Mary Jo also argued that the Plaintiffs could not be granted the full proceeds of the policy and that they could not rely upon Mary Jo's dissolution decree because they were not parties to the contract or intended beneficiaries.

On April 26, 2010, the court granted Mary Jo's motion for summary judgment and denied the Plaintiffs' motion for summary judgment. Specifically, the court found that federal law preempted state law and that FEGLIA barred the creation of a constructive trust and seizure of the life insurance proceeds or any portion thereof

from Mary Jo. The court also found that there was no just reason for delay and expressly directed entry of "final judgment as to any and all issues addressed and resolved herein pursuant to Trial Rule 58 of the Indiana Rules of Procedure, all in favor of [Mary Jo] and against the Plaintiffs...." *Id.* at 17.

 Mary Jo argues that "there is no evidence that the proceeds of the policy have been paid" and "[s]ince there is no corpus, there is no subject matter for the case, and the case is not ripe for review." Appellee's Brief at 23. We observe that the Indiana Supreme Court has held that Indiana trial courts possess two kinds of "jurisdiction." *K.S. v. State,* 849 N.E.2d 538, 540 (Ind.2006). "Subject matter jurisdiction is the power to hear and determine cases of the general class to which any particular proceeding belongs. Personal jurisdiction requires that appropriate process be effected over the parties." *Id.* The Court also held that "[o]ther phrases recently common to Indiana practice, like 'jurisdiction over a particular case,' confuse actual jurisdiction with legal error, and we will be better off ceasing such characterizations." *Id.* To the extent that Mary Jo argues that this case is not ripe for review, we observe that "[r]ipeness relates to the degree to which the defined issues in a case are based on actual facts rather than on abstract possibilities, and are capable of being adjudicated on an adequately developed record." *Ind. Dep't of Envtl. Mgmt. v. Chem. Waste Mgmt., Inc.,* 643 N.E.2d 331, 336 (Ind.1994). In ruling on a ripeness challenge, we must consider "the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.'" *Rene ex rel. Rene v. Reed,* 726 N.E.2d 808, 822 (Ind.Ct.App. 2000) (quoting *Pacific Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n,* 461 U.S. 190, 201, 103 S.Ct. 1713,

1720, 75 L.Ed.2d 752 (1983)). Here, it is undisputed that Carlos had a FEGLI life insurance policy, that Carlos died on August 9, 2008, and that the insurance coverage of the FEGLI policy totaled $98,000.00. Consequently, we conclude that the case is ripe for review.

The issue is whether the trial court erred in granting Mary Jo's motion for summary judgment and in denying the Plaintiffs' motion for summary judgment. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(c); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind.2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. *Mangold*, 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* We must carefully review a decision on summary judgment to ensure that a party was not improperly denied his day in court. *Id.* at 974. A party moving for summary judgment bears the initial burden of showing no genuine issue of material fact and the appropriateness of judgment as a matter of law. *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 975 (Ind.2005). If the movant fails to make this prima facie showing, then summary judgment is precluded regardless of whether the non-movant designates facts and evidence in response to the movant's motion. *Id.*

The fact that the parties make cross-motions for summary judgment does not alter our standard of review. *Hartford Acc. & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 291 (Ind.Ct.App.1997), *trans. denied.* Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.* The entry of specific findings and conclusions does not alter the nature of a summary judgment which is a judgment entered when there are no genuine issues of material fact to be resolved. *Rice v. Strunk*, 670 N.E.2d 1280, 1283 (Ind.1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions of law. *Id.* They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.*

■ The Plaintiffs argue in general that the court erred in granting Mary Jo's motion for summary judgment because FEGLIA does not preempt their claims. Specifically, the Plaintiffs argue that they "are entitled under state law to share the insurance proceeds equally" and that "[t]he state's interest in enforcing settlement agreements and divorce decrees does not conflict with the federal interest at issue in FEGLIA, which involves administrative efficiency...." Appellants' Brief at 11–12. The Plaintiffs argue that "[w]hile federal courts including *Metropolitan Life Insurance Co. v. Christ*, 979 F.2d 575, 578 (7th Cir.1992), cited by the trial court, have held that way, the vast majority of state courts addressing this very issue have found otherwise, and have concluded that an equitable claim for constructive trust and in some instances other claims under state law are not preempted by FEGLIA." *Id.* at 12–13. Mary Jo argues that Plaintiffs' "neglect to mention unanimous holdings of federal courts in similar situations, holding that FEGLIA does indeed preempt state law." Appellee's Brief at 7.

■ Initially, we address the general rules of federal preemption. The Supremacy Clause, which provides in relevant part that the laws of the United States "shall be the supreme Law of the Land ... any Thing in the Constitution or Laws of any

State to the Contrary notwithstanding," U.S. CONST. art. VI, cl. 2, provides Congress with the power to preempt state law. *Basileh v. Alghusain,* 912 N.E.2d 814, 818 (Ind.2009). "Courts, however, are reluctant to presume that preemption of state law has occurred." *Id.* (citing *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 663–664, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993) ("In the interest of avoiding unintended encroachment on the authority of the States, however, a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption.")).

Three variations of federal preemption doctrine exist: express preemption, which occurs when a statute expressly defines the scope of its preemptive effect, field preemption, which occurs when a pervasive scheme of federal regulation makes it reasonable to infer that Congress intended exclusive federal regulation of the area, and conflict preemption, which occurs when there is an outright conflict between federal and state law and thus it is either impossible to comply with both federal and state or local law, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Id.*

■■■ "Preemption is basically a question of congressional intent." *Id.* (citing *Barnett Bank of Marion County, N.A. v. Nelson,* 517 U.S. 25, 30, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996)). The purpose of Congress is the ultimate touchstone in every pre-emption case. *Id.* "But, '[t]here is indeed a presumption against pre-emption in areas of traditional state regulation such as family law.'" *Id.* (quoting *Egelhoff v. Egelhoff ex rel. Breiner,* 532 U.S. 141, 151, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001)). However, "where state law actually conflicts with federal law, state law must give way, even in fields such as domestic relations that traditionally have been governed by state law." *Metro. Life Ins. Co. v. Christ,* 979 F.2d 575, 578 (7th Cir.1992) (citing *Ridgway v. Ridgway,* 454 U.S. 46, 54–55, 102 S.Ct. 49, 54–55, 70 L.Ed.2d 39 (1981)). The best evidence of preemptive intent is an express preemption clause. *Basileh,* 912 N.E.2d at 818 (citing *Geier v. Am. Honda Motor Co., Inc.,* 529 U.S. 861, 895, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000)). In the absence of explicit preemption language, courts examine the structure and purpose of the federal statute for implicit preemptory intent. *Id.*

Here, FEGLIA contains a preemption clause that provides:

The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any law of any State or political subdivision thereof, or any regulation issued thereunder, which relates to group life insurance to the extent that the law or regulation is inconsistent with the contractual provisions.

5 U.S.C. 8709(d)(1). The Seventh Circuit addressed this clause as follows:

This clause broadly preempts any state law that is inconsistent with the FEGLIA master policy. The ordinary meaning of the term "relates to" is broad: "'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'" *Morales [v. Trans World Airlines, Inc.,* 504 U.S. 374, 383, 112 S.Ct. 2031, 2037, 119 L.Ed.2d 157 (1992)] (quoting Black's Law Dictionary 1158 (5th ed.1979)). Moreover, a state law need not specifically address the subject of the federal law to relate to that subject: "'[A] state law may "relate

to" a benefit plan, and thereby be preempted, even if the law is not specifically designed to affect such plans, or the effect is only indirect.'" *Id.* at [386], 112 S.Ct. at 2038 (quoting *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, [139], 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990)).

*Christ,* 979 F.2d at 579.

We also observe that FEGLIA contains an order of precedence. Specifically, 5 U.S.C. § 8705(a) provides that "[e]xcept as provided in subsection (e), the amount of group life insurance ... shall be paid ... in the following order of precedence:

First, to the beneficiary or beneficiaries designated by the employee...." [4] Subsection (e) provides that domestic decrees may alter the order or precedence set forth in subsection (a) but that a decree "shall not be effective unless it is received, before the date of the covered employee's death, by the employing agency or, if the employee has separated from service, by the Office." [5] Subsection (e)(4) authorizes the Office of Personnel Management (the "OPM") to prescribe regulations to carry out subsection (e) and pursuant to that authority, the OPM adopted regulations governing the order of precedence and payment of benefits. *See* 5 U.S.C.

4. 5 U.S.C. § 8705(a) provides in its entirety:

Except as provided in subsection (e), the amount of group life insurance and group accidental death insurance in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order of precedence:

First, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death in the employing office or, if insured because of receipt of annuity or of benefits under subchapter I of chapter 81 of this title as provided by section 8706(b) of this title, in the Office of Personnel Management. For this purpose, a designation, change, or cancellation of beneficiary in a will or other document not so executed and filed has no force or effect. Second, if there is no designated beneficiary, to the widow or widower of the employee.

Third, if none of the above, to the child or children of the employee and descendants of deceased children by representation.

Fourth, if none of the above, to the parents of the employee or the survivor of them.

Fifth, if none of the above, to the duly appointed executor or administrator of the estate of the employee.

Sixth, if none of the above, to other next of kin of the employee entitled under the laws of the domicile of the employee at the date of his death.

5. Subsection (e) provides in its entirety:

(1) Any amount which would otherwise be paid to a person determined under the order of precedence named by subsection (a) shall be paid (in whole or in part) by the Office to another person if and to the extent expressly provided for in the terms of any court decree of divorce, annulment, or legal separation, or the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce, annulment, or legal separation.

(2) For purposes of this subsection, a decree, order, or agreement referred to in paragraph (1) shall not be effective unless it is received, before the date of the covered employee's death, by the employing agency or, if the employee has separated from service, by the Office.

(3) A designation under this subsection with respect to any person may not be changed except—

(A) with the written consent of such person, if received as described in paragraph (2); or

(B) by modification of the decree, order, or agreement, as the case may be, if received as described in paragraph (2).

(4) The Office shall prescribe any regulations necessary to carry out this subsection, including regulations for the application of this subsection in the event that two or more decrees, orders, or agreements, are received with respect to the same amount.

8705(e)(4); *Metro. Life Ins. Co. v. Holland*, 134 F.Supp.2d 1197, 1201 (D.Or. 2001). At the time of Carlos's death, the relevant regulations provided:

(a) Except as provided in paragraph (d) of this section, benefits are paid according to the order of precedence stated in 5 U.S.C. 8705(a), as follows:

(1) To the designated beneficiary (or beneficiaries);

\* \* \* \* \* \*

(d)(1) If there is a court order in effect naming a specific person or persons to receive life insurance benefits upon the death of an insured individual, Basic insurance and Option A and Option B insurance will be paid to the person or persons named in the court order, instead of according to the order of precedence.

(2) *To qualify a person for such payment, a certified copy of the court order must be received by the appropriate office on or after July 22,* 1998, *and before the death of the insured.*

5 C.F.R. § 870.801 (2008) (emphasis added).[6] Further, "[a]n insured individual (or an assignee) may change his/her beneficiary at any time without the knowledge or consent of the previous beneficiary. *This right cannot be waived or restricted.*" 5 C.F.R. § 870.802(f) (2008) (emphasis added).

Here, it is undisputed that a certified copy of the dissolution decree was not received by the appropriate office before the date of Carlos's death. "To alter the designation of a beneficiary in this case by imposing a constructive trust would directly contradict the language of § 8705(e) that specifically mandates the conditions that must be met for a court divorce decree to be given effect." *Metro. Life Ins. Co. v. Zaldivar*, 413 F.3d 119, 121 (1st Cir.2005) (citation omitted). *See also Christ* 979 F.2d at 579–580 (holding that the divorce decree ordering a federal employee to maintain his children as benefi-

---

**6.** 5 C.F.R. § 870.801(a) was amended effective October 1, 2010 and currently provides:

(a) Except as provided in paragraph (d) of this section *and § 870.802(g)(2)*, benefits are paid according to the order of precedence stated in 5 U.S.C. 8705(a), as follows:

(1) To the designated beneficiary (or beneficiaries);

\* \* \* \* \* \*

(Emphasis added). The current version of § 870.802(g)(2) provides that "An assignment under subpart I of this part automatically cancels an insured individual's designation of beneficiary." The current version of subpart I provides:

(i)(1) Except as provided in paragraph (i)(2) of this section, if a court order has been received in accordance with § 870.801(d), an insured individual cannot designate a different beneficiary, unless

(i) The person(s) named in the court order gives written consent for the change, or

(ii) The court order is modified.

(2) If a court order has been received in accordance with § 870.801(d), and the court order applies to only part of the insurance benefits, an insured individual can designate a different beneficiary to receive the insurance benefits that are not included under the court order. If the insured individual does not make a designation for these benefits and there is no previous valid designation on file, benefits will be paid according to the order of precedence shown in § 870.801(a).

(3) If a court order received in accordance with § 870.801(d) is subsequently modified without naming a new person to receive the benefits, and a certified copy of the modified court order is received by the appropriate office before the death of the insured, the insured individual can designate a beneficiary. Benefits will be paid according to the order of precedence shown in § 870.801(d) if the insured individual does not complete a new designation of beneficiary.

ciaries on his FEGLI policy purported to restrict the employee's right to change his beneficiary which federal regulation explicitly provided could not be done); *Holland,* 134 F.Supp.2d at 1202 (holding that the statutory and regulatory requirements for an effective designation of beneficiary were not fulfilled where no one submitted to the OPM any court order before the decedent died).

We also find the Supreme Court's decision in *Ridgway v. Ridgway,* 454 U.S. 46, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981), instructive. In *Ridgway,* the issue was whether a serviceman's beneficiary designation under a policy governed by the Servicemen's Group Life Insurance Act ("SGLIA"), 38 U.S.C. §§ 1965–1979, prevailed over a constructive trust (based on a divorce decree) which a state court imposed upon the policy proceeds. 454 U.S. at 47, 102 S.Ct. at 51. Like FEGLIA, SGLIA establishes a specified "order of precedence" for policy beneficiaries. *Id.* at 52, 102 S.Ct. at 53. The Court held that "a state divorce decree, like other law governing the economic aspects of domestic relations, must give way to clearly conflicting federal enactments." *Id.* at 55, 102 S.Ct. at 55. The Court concluded that "the controlling provisions of the SGLIA prevail over and displace inconsistent state law." *Id.* at 60, 102 S.Ct. at 57.

"Because the applicable language of FEGLIA and SGLIA are very similar, a case construing the latter, such as *Ridgway,* is highly persuasive, if not binding, in construing the former." *Zaldivar,* 413 F.3d at 120 (citing *Christ,* 979 F.2d at 580–582; *Prudential Ins. Co. v. Hinkel,* 121 F.3d 364, 367 (8th Cir.1997), *cert. denied,* 522 U.S. 1048, 118 S.Ct. 693, 139 L.Ed.2d 638 (1998); *Brewer v. Zawrotny,* 978 F.2d 1204, 1206 n. 2 (10th Cir.1992), *cert. denied,* 507 U.S. 974, 113 S.Ct. 1418, 122 L.Ed.2d 788 (1993)). The Court concluded

that Congress, in enacting SGLIA, "spoke[ ] with force and clarity in directing that the proceeds belong to the named beneficiary and no other." *Ridgway,* 454 U.S. at 55, 102 S.Ct. at 55 (citation omitted). Based upon *Ridgway,* we conclude that FEGLIA preempts the divorce decree. *See Zaldivar,* 413 F.3d at 121 (citing *Ridgway* and holding "we are bound to conclude the state divorce decree directing the decedent to designate his children as beneficiaries under his life insurance policy conflicted with the decedent's right under FEGLIA to name the beneficiary, and must give way").

The Plaintiffs argue that *Ridgway* is not instructive because it analyzed the SGLIA which contained an anti-attachment provision which would not allow creditors to seize the proceeds from the SGLIA. However, numerous courts have addressed this contention and reached the opposite conclusion. *See Matthews v. Matthews,* 926 F.Supp. 650, 652 (N.D.Ohio 1996) (holding that Congress intended SGLIA to be construed the same as FEGLIA and "[i]n fact, the beneficiary designation provisions in FEGLIA are even stronger that those of SGLIA because FEGLIA regulations contain the additional admonition that the insured's right 'cannot be waived or restricted' "); *Christ,* 979 F.2d at 581 ("*Ridgway* did cite as a basis for preemption that the divorce decree and constructive trust in that case conflicted with SGLIA's anti-attachment provision. But that fact was a separate ground for holding that SGLIA preempted the divorce decree. *Ridgway's* discussion of the anti-attachment provision appears in a separate section of the opinion after the section in which the Court had already concluded that the conflict with SGLIA's order of precedence and the insured's absolute right to change beneficiaries justified holding that SGLIA preempted the divorce decree.") (citations omitted); *Metro. Life Ins. Co. v. McShan,*

577 F.Supp. 165, 169 (N.D.Cal.1983) ("The mere fact that FEGLIA contains no anti-attachment provision is insufficient to support defendants' argument ... that a constructive trust may be imposed consistently with the provisions of the act. In both *Wissner* [*v. Wissner*, 338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424 (1950)] and *Ridgway* the existence of an anti-attachment provision was an independent basis upon which the Supreme Court found preemption. In both cases, the Court found the designation provisions in sufficient conflict with state law to require preemption.") (internal citation omitted); *see also Metro. Life Ins. Co. v. Potter,* 533 So.2d 589, 595 (Ala.1988) ("The precedent set by *Ridgway v. Ridgway* has been followed consistently in cases dealing specifically with the FEGLI Act. The courts in all of these cases held that the FEGLI Act and regulations, giving the insured federal employee the right freely to designate a beneficiary, must preempt and supersede inconsistent provisions of a state court divorce judgment.") (internal citations omitted).

While the Plaintiffs cite opinions from some of our sister states, we find the approach taken by the Seventh Circuit and numerous federal and state courts to be the more compelling approach. Accordingly, we conclude that FEGLIA preempts the Plaintiffs' state law claims. *See Christ,* 979 F.2d at 576–582 (concluding that "[b]ecause the divorce decree and constructive trust remedy are inconsistent with the order of precedence incorporated in the policy, § 8709(d)(1)—aside from any other principles of preemption—expressly requires that the policy preempts the divorce decree and constructive trust");[7] *see also Zaldivar,* 413 F.3d at 120 (holding that FEGLIA preempted a state law claim for the imposition of a constructive trust upon the proceeds of a federal group life insurance policy and that to alter the designation of the beneficiary by imposing a constructive trust would directly contradict the language of § 8705(e) that specifically mandates the conditions that must be met for a court divorce decree to be given effect); *Hinkel,* 121 F.3d 364 at 367 ("It has been consistently held in regard to FEGLIA that a divorce decree cannot operate as a waiver or restriction of an insured's right to change the beneficiary when federal regulations conflict."); *Metro. Life Ins. Co. v. Sullivan,* 96 F.3d 18, 20 (2d Cir.1996) ("To the extent that New York law allows for a change of beneficiaries by third parties, it conflicts with FEGLIA and is preempted."), *cert. denied,* 519 U.S. 1122, 117 S.Ct. 972, 136 L.Ed.2d 856 (1997); *Dean v. Johnson,* 881 F.2d 948, 949 (10th Cir.1989) (holding that a state domestic relations court order ostensibly restricted the federal insured's right to designate a beneficiary and thus could not be valid under FEGLIA), *cert. denied,* 493 U.S. 1011, 110 S.Ct. 574, 107 L.Ed.2d 569 (1989); *Holland,* 134 F.Supp.2d at 1202 (holding that, under FEGLIA, "the equities are neither relevant nor determinative on the issue of who is entitled to FEGLI life insurance proceeds"); *Metro. Life Ins. Co. v. Pearson,* 6 F.Supp.2d 469, 471–472 (D.Md.1998) (addressing FEGLIA and holding that federal law prevented the imposition of a constructive trust); *Mat-*

7. To the extent that the Plaintiffs suggest that *Christ* is not instructive because *Christ* involved MetLife as an interpleader, we disagree. *Christ* involved the proper distribution of the proceeds of a FEGLIA policy. 979 F.2d at 576. The Seventh Circuit observed that MetLife paid the policy proceeds into the court registry, that the district court dis- charged MetLife from any further liability, and that MetLife had no stake in the proceeding and dismissed MetLife's appeal. *Id.* at 577 n. 1. The court also observed that the dismissal had no practical effect on the outcome of the case because the second wife's timely appeal raised the same arguments MetLife sought to raise. *Id.*

*thews*, 926 F.Supp. at 652–653 (observing that "it appears Congress intended that the beneficiary properly designated by the insured take precedence over any other beneficiary, regardless of whether the non-designated individual might have a valid claim under state law" and that "[n]umerous federal courts have held that the federal regulations regarding FEGLI benefits preempt a state divorce decree that orders an insured to designate or maintain certain persons as beneficiaries of FEGLI benefits," and holding that "the state divorce decree provides no authority to grant the benefits to the plaintiff"); *Metro. Life Ins. Co. v. Bell*, 924 F.Supp. 63, 65 (E.D.Tex. 1995) (following precedent of other federal courts and holding that a constructive trust was expressly preempted by FEGLIA); *Lewkowicz v. Lewkowicz*, 761 F.Supp. 48, 49 (E.D.Mich.1991) ("Federal courts ... are in agreement that § 8705 preempts any changes in FEGLI policy that are dictated by state divorce decrees and marriage settlements.").[8] Consequently, we conclude that the trial court did not err in granting Mary Jo's motion for summary judgment and denying the Plaintiffs' motion for summary judgment.

For the foregoing reasons, we affirm the trial court's grant of Mary Jo's motion for summary judgment and denial of the Plaintiffs' motion for summary judgment.

Affirmed.

DARDEN, J., and BRADFORD, J., concur.

---

8. *See also Mercier v. Mercier*, 721 F.Supp. 1124, 1128 (D.N.D.1989) (rejecting the plaintiffs' request for a constructive trust and holding that "the federal law is such that the moving parties are entitled to summary judgment on the issue of whether a constructive trust may be imposed on the proceeds of a FEGLI policy"); *McShan*, 577 F.Supp. at 169 (rejecting the plaintiff's request for a constructive trust and holding that "FEGLIA, related regulations and federal case law all indicate that the state court order, being in direct conflict with federal law, must yield," and that the designated beneficiary was "entitled by law to the proceeds of the life insurance policy without restriction"); *Knowles v. Metro. Life Ins. Co.*, 514 F.Supp. 515, 516 (N.D.Ga.1981) (observing that the insurance policy in question was not a private contract between the insured and the insurer, but a federal policy administered under federal law, and holding that a marriage settlement agreement could not operate as a waiver or restriction of the insured's right to change his beneficiary); *Potter*, 533 So.2d at 593, 595 (holding that if the divorce judgment is deemed to control payment of the FEGLI proceeds, then it conflicts with the federal statutory order of precedence, with the decedent's right to change beneficiaries without restriction under federal regulation, with the express preemption provision of 5 U.S.C. § 8709(d)(1), and "[w]hile the result we reach in this case may seem harsh, the language and intent of the congressional act and the regulations promulgated pursuant to the authority granted by the Act, are clear, and the result we reach is the same result other courts have reached when dealing with cases involving a FEGLI policy"); *Estate of Hanley v. Andresen*, 39 Wash.App. 377, 380, 693 P.2d 198, 200 (1984) (holding that the divorce decree could not operate to change the designated beneficiary).