ATTORNEY FOR APPELLANTS
Benjamin L. Niehoff
Bloomington, Indiana

ATTORNEY FOR APPELLEE
Brad L. Rigby
Huntingburg, Indiana



FILED

Mar 14 2012, 11:15 am

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 51S01-1106-PL-366

PHYLLIS HARDY,
ALAX KEITH FURNISH AND MEGAN
JESSICA FURNISH, BY NEXT FRIEND
PHYLLIS HARDY,

*Appellants (Plaintiffs below),*

v.

MARY JO HARDY,

*Appellee (Defendant below).*

Appeal from the Martin Circuit Court, No. 51C01-0901-PL-0059
The Honorable R. Joseph Howell, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 51A01-1005-PL-248

**March 14, 2012**

**David, Justice.**

In this case, an insured held a life insurance policy issued as part of a federal employee benefit plan. When the insured divorced from his first wife, the divorce decree and property settlement required the insured (1) to maintain the life insurance policy and (2) to designate the first wife and their grandchildren as equal beneficiaries. Subsequently, the insured remarried, designated his second wife as the sole beneficiary to the life insurance policy, and increased the insurance coverage. After some time, the insured and second wife divorced. When the insured died, the second wife remained the sole beneficiary on the life insurance policy.

The first wife and grandchildren filed suit, asserting equitable claims over the life insurance proceeds. On cross-motions for summary judgment, the trial court determined that federal employee benefit law preempted the equitable state law claims and that the policy proceeds accordingly belonged to the second wife.

We hold that the Federal Employees' Group Life Insurance Act does not preempt the equitable claims and that the first wife and grandchildren are entitled to a constructive trust over at least a portion of the proceeds.

## Facts and Procedural History

Carlos Hardy and Phyllis Hardy were married on December 26, 1976. In 1996, Carlos began working at the Naval Surface Warfare Center, Crane Division (NSWC Crane) as a civilian employee. Through NSWC Crane, Carlos had a life insurance policy with Federal Employees' Group Life Insurance (FEGLI).

On February 2, 1998, Carlos and Phyllis divorced. Their decree of dissolution stated, in part, that "Carlos Hardy shall maintain the Met Life Insurance Policy which has been held during the marriage. Phyllis Hardy and the parties' grandchildren shall each be designated as equal beneficiaries of the policy. Phyllis Hardy shall continue to maintain the life insurance which she has held during the marriage." It continued, "Neither party shall change any of the life insurance coverage on either policy." The MetLife policy mentioned in the divorce decree and property settlement is the FEGLI policy.[1]

The decree of dissolution also incorporated a property settlement agreement which, among other things, reiterated that Carlos "shall maintain" the FEGLI policy and that Phyllis and the grandchildren would be equal beneficiaries of the policy.

On September 29, 2000, Carlos married Mary Jo (Hall) Hardy. Several days later, on October 4, 2000, Carlos submitted a designation-of-beneficiary form, making Mary Jo the sole

---

[1] The Court of Appeals appropriately pointed to a designated affidavit of Phyllis, which explained that the MetLife policy set forth in the divorce decree was actually the FEGLI policy. Hardy v. Hardy, 942 N.E.2d 838, 840 n.3 (Ind. Ct. App. 2011). The affidavit stated, "MetLife administers the FEGLI policy, which was the reason the divorce decree referred to a 'MetLife Policy.'" Id.

2

beneficiary of his FEGLI policy. That same day, Carlos also increased his insurance coverage. On September 17, 2007, Carlos and Mary Jo divorced.

Their decree of dissolution incorporated a contract and agreement, which stated in part, "[E]ach of the parties hereto shall be awarded any and all life insurance policies which he or she has securing his or her own respective life. [And] each party shall execute any documents necessary to remove his or her name as beneficiaries from each other's respective life insurance policies."

Carlos died on August 9, 2008. At the time of Carlos's death, Carlos and Phyllis had two grandchildren, Alax Furnish and Megan Furnish. Mary Jo was the named beneficiary on the FEGLI policy, which had payable benefits of approximately $98,000.

In January 2009, Phyllis, Alax Furnish, and Megan Furnish (collectively, "Phyllis and the grandchildren") filed a complaint for declaratory judgment and constructive trust over the insurance proceeds. In June 2009, Phyllis and the grandchildren filed a motion for summary judgment, arguing that they were entitled to the proceeds of Carlos's life insurance policy. They also asserted that the doctrines of waiver and estoppel precluded any recovery for Mary Jo.

Mary Jo filed a response and a cross-motion for summary judgment, arguing that she was the rightful recipient of the proceeds. She stated that the Federal Employees' Group Life Insurance Act (FEGLIA)[2] preempted Carlos and Phyllis's divorce decree and that FEGLIA required the proceeds be paid to the named beneficiary in the policy. Mary Jo asserted that this prevented the court from imposing a constructive trust under state law. Mary Jo also advanced an alternative argument: she claimed that in the event Phyllis and the grandchildren were entitled to assert their claims, they were limited to the policy's value at the time of Carlos and Phyllis's divorce.

The trial court granted Mary Jo's motion for summary judgment, agreeing with her preemption argument. The trial court accordingly awarded all of the FEGLI policy proceeds to Mary Jo. Phyllis and the grandchildren appealed, and Mary Jo argued that the case was not ripe for review. After determining that the case was, in fact, ripe for review, the Court of Appeals affirmed the trial court. Hardy v. Hardy, 942 N.E.2d 838, 842, 848 (Ind. Ct. App. 2011).

---

[2] 5 U.S.C. §§ 8701–8716 (2006 & Supp. IV 2010).

We granted transfer.

## Standard of review

On appeal, the standard of review of a summary judgment motion is the same as that used in the trial court. Tom-Wat, Inc. v. Fink, 741 N.E.2d 343, 346 (Ind. 2001). Summary judgment is appropriate only "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C).

The standard of review does not change if, as here, the parties make cross-motions for summary judgment. Blasko v. Menard, Inc., 831 N.E.2d 271, 273 (Ind. Ct. App. 2005), trans. denied. Rather, we apply the standard of review to each motion separately. Id.

We construe all facts and reasonable inferences drawn from those facts in favor of the non-moving party, and our review is limited to the materials designated to the trial court. Tom-Wat, Inc., 741 N.E.2d at 346. We also carefully review a decision on a summary judgment motion to ensure that the losing party was not improperly denied his day in court. Id.

In this case, both parties' motions for summary judgment turn on whether FEGLIA preempts the state law claim for a constructive trust. Preemption is a question of law. Cf. Midwest Sec. Life Ins. Co. v. Stroup, 730 N.E.2d 163, 165–166 (Ind. 2000) ("[W]hether ERISA preempts . . . state law claims is a question of law."). Because there is no factual dispute bearing on the preemption issue, "the appellate court will make a final determination with respect to a pure question of law or a mixed question of law and fact not involving disputed material facts." Tom-Wat, Inc., 741 N.E.2d at 346.

## Preemption, FEGLIA, and Equitable State Law Claims

This Court must decide whether FEGLIA preempts a state law claim for the imposition of a constructive trust upon the proceeds of a FEGLI policy.

Mary Jo argues that FEGLIA and its underlying regulations govern the procedures applicable to naming designated beneficiaries and that these federal provisions require that Carlos's

policy proceeds be paid to her.[3] She contends that a state dissolution decree requiring Carlos to designate Phyllis and the grandchildren as beneficiaries directly conflicts with federal law, and, thus, the doctrine of preemption prevents a court from imposing a constructive trust over the proceeds based on the decree.

Phyllis and the grandchildren concede that FEGLIA governs to whom the policy proceeds are paid and that Mary Jo has the right to receive the proceeds directly. They argue, however, that there is a "difference between the right to receive the proceeds directly and the right to ultimate enjoyment of the proceeds." They contend that nothing in FEGLIA prevents a court from imposing a constructive trust in favor of persons rightfully entitled to a federal life insurance policy's proceeds.

This specific preemption question is an issue of first impression for this Court. But we note that several state and federal courts have explored whether FEGLIA preempts equitable state law claims and have reached disparate results. Two schools of thought have emerged: one finding that FEGLIA preempts equitable state law claims, and the other finding that equitable state law claims may proceed notwithstanding FEGLIA's provisions.

A. *Preemption Generally*

The Supremacy Clause of the United States Constitution states in part that "the Laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. This provides

---

[3] Mary Jo does not reassert her ripeness argument before this Court. Regardless, we note that the Court of Appeals analysis of the ripeness issue is on point:

> To the extent that Mary Jo argues that this case is not ripe for review, we observe that "[r]ipeness relates to the degree to which the defined issues in a case are based on actual facts rather than on abstract possibilities, and are capable of being adjudicated on an adequately developed record." In ruling on a ripeness challenge, we must consider "'the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.'" Here, it is undisputed that Carlos had a FEGLI life insurance policy, that Carlos died on August 9, 2008, and that the insurance coverage of the FEGLI policy totaled $98,000.00. Consequently, we conclude that the case is ripe for review.

Hardy, 942 N.E.2d at 841–42 (internal citations omitted).

Congress with the power to preempt state law.  Basileh v. Alghusain, 912 N.E.2d 814, 818 (Ind. 2009).

There are three kinds of federal preemption: (1) express preemption, which occurs when a federal statute contains specific language of preemption; (2) field preemption, which occurs when federal regulation is so pervasive that it is reasonable to infer that Congress intended exclusive federal regulation of the area; and (3) conflict preemption, which occurs when a direct conflict makes it impossible to comply with both federal and state regulations or when a state law stands as an obstacle to the execution of federal purposes and objectives.  Id.

Essentially, preemption is a question of congressional intent.  Id.  And an express preemption clause is the best evidence of preemptive intent.  Geier v. Am. Honda Motor Co., 529 U.S. 861, 895 (2000).  In the absence of explicit preemption language, "courts must consider whether the federal statute's 'structure and purpose,' or nonspecific statutory language, nonetheless reveal a clear, but implicit, pre-emptive intent."  Barnett Bank of Marion County, N.A. v. Nelson, 517 U.S. 25, 31 (1996) (quoting Jones v. Rath Packing Co., 430 U.S. 519, 525 (1977)).

Finally, there exists a presumption against preemption in areas of traditional state regulation, such as family law.  CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 663–64 (1993). "State family and family-property law must do 'major damage' to 'clear and substantial' federal interests before the Supremacy Clause will demand that state law be overridden."  Hisquierdo v. Hisquierdo, 439 U.S. 572, 581 (1979) (quoting United States v. Yazell, 382 U.S. 341, 352 (1966)).

B. *FEGLIA*

FEGLIA's purpose is "to provide low-cost group life insurance to Federal employees." H.R. Rep. No. 83-2579, at 1 (1954), reprinted in 1954 U.S.C.C.A.N. 3052, 3052.  The U.S. Office of Personnel Management (OPM) administers the federal group life insurance program and "may prescribe regulations necessary to carry out the purposes of" FEGLIA.  5 U.S.C. § 8716(a) (2006).

Mary Jo directs us to several FEGLIA provisions and the United States Supreme Court's decision in Ridgway v. Ridgway, 454 U.S. 46 (1981), to support her position that FEGLIA pre-

6

cludes a court from imposing a constructive trust on life insurance proceeds. She also cites federal decisions that have ruled in favor of preemption.[4]

Phyllis and the grandchildren acknowledge that federal court decisions, including <u>Metropolitan Life Insurance Co. v. Christ</u>, 979 F.2d 575 (7th Cir. 1992), have decided that FEGLIA preempts equitable state law claims. But they point to numerous state courts that have reached a different result.[5]

After careful consideration of the two distinct analyses on this issue, we choose to follow the majority of state courts in finding that there is nothing within FEGLIA or elsewhere preventing a state court from imposing a constructive trust on FEGLI proceeds. Accordingly, we conclude that FEGLIA does not preempt an equitable state law claim for a constructive trust, notwithstanding (1) FEGLIA provisions relating to the designation of beneficiaries; (2) FEGLIA's preemption clause; and (3) <u>Ridgway</u>, 454 U.S. 46.

### 1. *Provisions and Regulations Relating to the Designation of Beneficiaries*

A section of FEGLIA, coupled with regulations promulgated under FEGLIA, establishes to whom FEGLI proceeds are paid when a policyholder dies. Specifically, the provisions provide an order of precedence for beneficiaries and also explain when a court order alters that order of precedence.

Section 8705(a) sets the "order of precedence" and provides in part,

(a) Except as provided in subsection (e), the amount of group life insurance . . . in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order of precedence:

---

[4] E.g., <u>Metro. Life Ins. Co. v. Zaldivar</u>, 413 F.3d 119 (1st Cir. 2005); <u>Metro. Life Ins. Co. v. Sullivan</u>, 96 F.3d 18 (2d Cir. 1996); <u>Metro. Life Ins. Co. v. Christ</u>, 979 F.2d 575, 578 (7th Cir. 1992); <u>Dean v. Johnson</u>, 881 F.2d 948 (10th Cir. 1989); <u>O'Neal v. Gonzalez</u>, 839 F.2d 1437 (11th Cir. 1988); <u>Metro. Life Ins. Co. v. McMorris</u>, 786 F.2d 379 (10th Cir. 1986).

[5] E.g., <u>In re Anderson</u>, 552 N.E.2d 429 (Ill. App. Ct. 1990); <u>McCord v. Spradling</u>, 830 So. 2d 1188 (Miss. 2002); <u>Kidd v. Pritzel</u>, 821 S.W.2d 566 (Mo. Ct. App. 1991); <u>Sedarous v. Sedarous</u>, 666 A.2d 1362 (N.J. Super. Ct. App. Div. 1995); <u>Eonda v. Affinito</u>, 629 A.2d 119 (Pa. Super. Ct. 1993); <u>Fagan v. Chaisson</u>, 179 S.W.3d 35 (Tex. App. 2005).

> First, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death in the employing office or [under certain circumstances] in the Office of Personnel Management. For this purpose, a designation, change, or cancellation of beneficiary in a will or other document not so executed and filed has no force or effect.
>
> Second, if there is no designated beneficiary, to the widow or widower of the employee.

This priority list continues within subsection (a). Subsection (e)[6] of section 8705 states that a dissolution decree that expressly names a person as the recipient of FEGLI proceeds will alter the order of precedence if the decree "is received, before the date of the covered employee's death, by the employing agency or, if the employee has separated from service, by the Office [of Personnel Management]." 5 U.S.C. § 8705(e)(2).

Furthermore, regulations promulgated under FEGLIA expand on the subject of beneficiaries. First, 5 C.F.R. § 870.801 (2012) provides in part that if a court order names "a specific person or persons to receive life insurance benefits upon the death of an insured individual . . . a certified copy of the court order must be received by the appropriate office on or after July 22,

---

[6] The subsection reads in full as follows:

> (e)(1) Any amount which would otherwise be paid to a person determined under the order of precedence named by subsection (a) shall be paid (in whole or in part) by the Office to another person if and to the extent expressly provided for in the terms of any court decree of divorce, annulment, or legal separation, or the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce, annulment, or legal separation.
>
> (2) For purposes of this subsection, a decree, order, or agreement referred to in paragraph (1) shall not be effective unless it is received, before the date of the covered employee's death, by the employing agency or, if the employee has separated from service, by the Office.
>
> (3) A designation under this subsection with respect to any person may not be changed except—
>
>> (A) with the written consent of such person, if received as described in paragraph (2); or
>>
>> (B) by modification of the decree, order, or agreement, as the case may be, if received as described in paragraph (2).
>
> (4) The Office shall prescribe any regulations necessary to carry out this subsection, including regulations for the application of this subsection in the event that two or more decrees, orders, or agreements, are received with respect to the same amount.

5 U.S.C. § 8705(e).

8

1998, and before the death of the insured." 5 C.F.R. § 870.801(d)(1), (2).[7] And the next section provides that an insured person may change his or her beneficiary "at any time without the knowledge or consent of the previous beneficiary" and that this right "cannot be waived or restricted." 5 C.F.R §870.802(f).

In sum, these provisions and regulations (1) provide that an insured has the right to change his or her beneficiary at any time; (2) prioritize who shall be paid FEGLI proceeds, with the designated beneficiary at the top of the list; and (3) state when and how a dissolution decree can trump this priority list.

In this case, no one sent a certified copy of Phyllis and Carlos's dissolution decree to the appropriate office before Carlos's death. Mary Jo accordingly argues that the dissolution decree cannot be enforced against her because the requirements of FEGLIA were not met. Mary Jo elaborates that Phyllis and the grandchildren "could have guaranteed themselves at least part of the proceeds of the policy by following [a] simple procedure, and they had ten years in which to do so, but they did not."

Mary Jo cites several federal decisions, which presented similar fact patterns, to support her contention. The Court of Appeals found these decisions persuasive and stated, "'[t]o alter the designation of a beneficiary in this case by imposing a constructive trust would directly contradict the language of § 8705(e) that specifically mandates the conditions that must be met for a court divorce decree to be given effect.'" Hardy, 942 N.E.2d at 845 (quoting Metro. Life Ins. Co. v. Zaldivar, 413 F.3d 119, 121 (1st Cir. 2005)). Although this reasoning has been followed by numerous federal courts, many state courts have ruled against preemption. They have found that section 8705 "merely provides a simple procedure for *payment* of the policy's proceeds" and that a constructive trust imposed after the policy proceeds are paid would not conflict with that procedure. Kidd v. Pritzel, 821 S.W.2d 566, 569, 572 (Mo. Ct. App. 1991) (emphasis added). Phyllis and the grandchildren urge us to adopt that logic, asserting that "the federal objective was

---

[7] As the Court of Appeals correctly noted, 5 C.F.R § 870.801 was amended effective October 1, 2010. Hardy, 942 N.E.2d at 845 n.6. The portion of subsection (d) quoted and cited in this opinion, however, was not affected, and it contains the same language as the version in effect at the time of Carlos's death. The most significant amendment was made to subsection (a), and we note that our analysis remains the same under either version of 5 C.F.R. § 870.801.

not to provide an absolute right to designate a beneficiary regardless of the content of settlement agreements and divorce decrees but simply to allow for efficiency in the payment of claims directly by FEGLIA."

We agree that the imposition of a constructive trust does not conflict with the provisions relating to the order of precedence and designation of beneficiaries. "[T]he sole purpose of section 8705 has always been to provide for the speedy and economic settlement of insurance claims." Fagan v. Chaisson, 179 S.W.3d 35, 42 (Tex. App. 2005) (citing Kidd, 821 S.W.2d at 569–70, and noting Kidd's examination of FEGLIA's legislature history). The section "fulfills the congressional intention by reducing . . . administrative and legal hassles." Kidd, 821 S.W.2d at 572. Thus, once proceeds are paid out to a designated beneficiary, the purpose of § 8705 has been achieved. Id. And state law claims asserting an equitable interest in those proceeds do not affect that purpose and thus do not conflict with the congressional intent underlying FEGLIA. Id. As aptly stated in Kidd,

> Regardless of what claims are brought to recover the proceeds once they are paid out to the designated beneficiary, the purpose of § 8705 has been served. Neither the insurance carrier nor the government can be burdened by participation in a state judicial proceeding to recover the proceeds. Nor will they be saddled with the unpleasant and cumbersome task of interpreting state statutes, divorce decrees, property settlement agreements or wills. Under § 8705 the insurer may simply pay the policy proceeds quickly and directly to the named beneficiary and be done with it. If the insured fails to designate a beneficiary, the statute provides direction to determine the person to pay. This does not bar equitable claims . . . .

Id.

This reasoning applies with equal force to the regulations promulgated under FEGLIA, specifically, sections 870.801 and 870.802. These regulations "compliment[] the Congressional intent of section 8705 (to alleviate administrative hassles and expedite the payment of claims)" and do not preempt equitable state law claims. Fagan, 179 S.W.3d at 44.

Ultimately, a constructive trust does not affect who holds legal title to the FEGLI proceeds. That is controlled by FEGLIA and the regulations promulgated under it—they control to whom the proceeds are directly paid. A constructive trust, on the other hand, protects an *equitable* interest in the proceeds.

## 2. *FEGLIA's Preemption Clause*

FEGLIA also contains a preemption clause, which states,

The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any law of any State or political subdivision thereof, or any regulation issued thereunder, which relates to group life insurance to the extent that the law or regulation is inconsistent with the contractual provisions.

5 U.S.C. § 8709(d)(1).

Mary Jo asserts that this preemption clause prevents state law from changing to whom FEGLI proceeds are paid. We agree that FEGLIA and the regulations promulgated under it control who holds legal title to the proceeds. But we see nothing in the preemption clause that precludes equitable state law claims. To interpret the preemption clause as preventing the imposition of a constructive trust extends the clause's scope beyond its plain language.

"The text of section 8709 reveals that it is only concerned with conflicts between state regulation of group life insurance programs and the express contractual provisions contained in FEGLIA policies." Fagan, 179 S.W.3d at 43. On the other hand, the preemption clause "is not concerned with state law claims brought once the proceeds of a policy are paid out." Kidd, 821 S.W.2d at 573.

Ultimately, the preemption clause's purpose is to "alleviate the difficulty of interpreting state laws and regulations concerning group life insurance." Id. This purpose is consistent with the purpose underlying the provisions discussed in the previous section: the reduction of administrative and legal hassles. Id.

## 3. *Ridgway*

Mary Jo argues that the United States Supreme Court decision of Ridgway v. Ridgway, 454 U.S. 46 (1981), supports her preemption argument. Federal decisions have often cited this case in support of a conclusion that FEGLIA preempts equitable state law claims. E.g., Christ, 979 F.2d at 580–82. On the other hand, several state court decisions have found Ridgway inapplicable to the FEGLIA preemption issue. E.g., Fagan, 179 S.W.3d at 44–45. Importantly,

11

Ridgway does not directly address FEGLIA but rather the Servicemen's Group Life Insurance Act of 1965 (SGLIA).[8] Ridgway's facts, however, are similar to the present case.

In Ridgway, the United States Supreme Court considered whether SGLIA precluded the imposition of a constructive trust. 454 U.S. at 47. Ridgway involved a divorce decree that ordered the insured to maintain life insurance policies, including a SGLIA policy, for the benefit of the three children from the first marriage. Id. at 48. After the divorce, the insured remarried and essentially designated his second wife as the beneficiary of his SGLIA policy. Id. at 48–49. After the insured died, both the first and second wives filed claims for the SGLIA proceeds. Id. at 49. Subsequently, the first wife, on behalf of the three minor children, filed suit, seeking to enjoin the payment of the SGLIA proceeds to the second wife. Id. Ultimately, the United States Supreme Court decided that SGLIA preempted equitable state law claims. Id. at 60, 62. The Court found that the beneficiary designation controlled, and thus the second wife was entitled to the proceeds. Id. at 62.

Although FEGLIA and SGLIA share similarities, there is one significant difference between the two Acts. Ridgway's language on this difference is instructive.

In Ridgway, the Court determined that SGLIA's order of precedence conferred a right on an insured to designate his policy beneficiary. Id. at 55–57. As discussed above, section 8705 of FEGLIA also confers this right on an insured. But Ridgway also extensively discussed SGLIA's anti-attachment provision, which provided that SGLIA policy proceeds were exempt from creditors and "any 'attachment, levy, or seizure by or under any legal or equitable process whatever,' whether accomplished 'either before or after receipt by the beneficiary.'" Id. at 61. The Court found that a constructive trust on the SGLIA proceeds would operate as a prohibited "seizure" of the SGLIA proceeds, in contravention of the anti-attachment provision. Id. at 60. Furthermore, "Ridgway expressly stated that if Congress chose to avoid the result in that case, it could do so by enacting legislation which did not include an anti-attachment provision." Kidd, 821 S.W.2d at 571 (citing Ridgway, 454 U.S. at 63).

---

[8] SGLIA is now the Servicemembers' Group Life Insurance Act and is found at 38 U.S.C. §§ 1965–1980A (2006 & Supp. IV 2010).

Mary Jo argues that although Ridgway discussed the anti-attachment provision, it was one of two separate bases for preemption. Mary Jo asserts that because SGLIA's order of precedence alone was sufficient to find that SGLIA preempted equitable state law claims, it is of no import that FEGLIA lacks an anti-attachment provision. The Court of Appeals agreed with Mary Jo's contention, citing numerous federal decisions, including Christ, in support. Hardy, 942 N.E.2d at 846–47.

In response, Phyllis and the grandchildren note that Ridgway (and Christ) were decided before 1998. In 1998, subsection (e) was added to section 8705 to provide, as discussed above, that dissolution decrees could alter FEGLIA's order of precedence where the decree was forwarded to the appropriate office prior to the insured's death. Phyllis and the grandchildren argue that "[t]his provision is further evidence that the FEGLIA order of precedence is not about who ultimately receives the proceeds after they are paid . . . but rather is about a concern for administrative efficiency in the payment of claims."

We first note that SGLIA does not contain a method, like section 8705(e) of FEGLIA, by which a decedent's designation of beneficiary can be overridden. We also note that the purpose behind SGLIA is quite different than FEGLIA. As explained above, FEGLIA's primary purpose revolves around administrative efficiency. On the other hand, when enacting SGLIA, Congress "'spoke[] with force and clarity in directing that the proceeds belong to the named beneficiary and no other.'" 454 U.S. at 56 (quoting Wissner v. Wissner, 338 U.S. 655, 658 (1950)).

Ultimately, the lack of an anti-attachment provision within FEGLIA, the divergent purposes underscoring FEGLIA and SGLIA, and the 1998 amendment to section 8705 of FEGLIA compel us to conclude that Ridgway is not controlling here. The order of preference in FEGLIA is an administrative tool to allow for the efficient payment of FEGLI proceeds. We realize that some decisions have interpreted Ridgway differently, but we respectfully disagree.

Accordingly, we hold that FEGLIA does not preempt equitable state law claims to recover FEGLI proceeds that have been paid in accordance with FEGLIA's provisions and the regulations promulgated under it. A different conclusion would run afoul of the strong presumption against preemption in this traditional area of state regulation. As the Pennsylvania Superior Court fittingly recognized,

13

> [W]e are confident that Congress did not intend that the vast number of federal employees in this country be permitted to enter into voluntary, state court-sanctioned agreements . . . and then shirk completely the duties imposed by those agreements. The federal interest in doing so is far too minimal and the damaging impact to state domestic relations law far too grave.

Eonda v. Affinito, 629 A.2d 119, 123 (Pa. Super. Ct. 1993).

C. *Equitable State Law Claim*

Because FEGLIA does not preempt equitable state law claims, we turn to the merits of the parties' arguments. Phyllis and the grandchildren argue that they are entitled to the full proceeds of Carlos's FEGLI policy. Mary Jo argues that if this Court allows Phyllis and the grandchildren's equitable claims to proceed, this Court should find that they are entitled to only the value of the FEGLI policy at the time of the 1998 divorce decree.

As stated earlier, this case involves cross-motions for summary judgment. Here it is undisputed that in 1998 Carlos and Phyllis entered into a property settlement agreement that was incorporated into their final decree of dissolution of marriage. This agreement provided that "Carlos Hardy shall maintain the Met Life Insurance Policy which has been held during the marriage. Phyllis Hardy and the parties' grandchildren shall each be designated as equal beneficiaries of the policy." At the time of the divorce, the death benefit value of the policy was based on Carlos having elected the policy's "Option A." Furthermore, it is undisputed that Carlos subsequently married Mary Jo, designated her as the beneficiary of his FEGLI policy, and increased his FEGLI policy coverage by electing "Option B." And when Carlos and Mary Jo divorced, they were each awarded any life insurance policies securing their respective lives.

Property settlement agreements crafted upon divorce are contractual and binding. Rodriguez v. Rodriguez, 818 N.E.2d 993, 996 (Ind. Ct. App. 2004), trans. denied. An action to recover the proceeds of a life insurance policy based on an insured's violation of a divorce decree may be brought against any person or entity designated by the insured as a beneficiary of the policy in question. See Meece v. Meece, 495 N.E.2d 827, 827–28 (Ind. Ct. App. 1986). Mary Jo acknowledges these established legal principles, but she argues that "the amount of recovery is limited to the contracted amount between parties." She contends that the word "maintain" in the

14

1998 settlement agreement means she is entitled to any gains of the policy after Carlos and Phyllis divorced.

Here, the divorce decree and property settlement agreement undoubtedly entitle Phyllis and the grandchildren to whatever the death benefit under Option A would have been at the date of Carlos's death, as Carlos had to "maintain" his policy for the benefit of Phyllis and the grandchildren. The trial court never reached the issue of who is entitled to any balance above that amount, as it agreed with Mary Jo's preemption argument and awarded all of the proceeds to her. Accordingly, remanding to the trial court on that issue is appropriate.

**Conclusion**

We find that FEGLIA does not preempt an equitable state law claim for a constructive trust over FEGLI policy proceeds. We also find that the property settlement in this case required Carlos to "maintain" his FEGLI policy for the benefit of Phyllis and the grandchildren. Phyllis and the grandchildren are at least entitled to whatever the death benefit value under "Option A" would have been at the date of Carlos's death, and they hold the equitable right to enjoy those proceeds once they are paid.

Accordingly, we reverse the trial court's grant of summary judgment in favor of Mary Jo. We remand to the trial court to determine what the death benefit value under "Option A" was at the date of Carlos's death; place a constructive trust over that amount in favor of Phyllis and the grandchildren; and determine who is entitled to any balance.

Shepard, C.J., and Dickson, Sullivan, and Rucker, JJ., concur.

15